DECIDED IN THE

## Circuit Court of the District of Columbia

FOR THE

## COUNTY OF WASHINGTON,

### MARCH TERM, 1849.

---

JAMES LARNED AND THOMAS CARBERY

*vs.*

JAMES ADAMS AND MATTHEW TRIMBLE, EXECUTORS OF
MATTHEW WRIGHT.

At Law. DECIDED APRIL 12, 1849.

*Appeal from the Orphans' Court.*

1. A gift of the sum of "$20,000 out of the 6 per cent. stock of the corporation of Washington in my name, if so much should remain out of my personal estate, after satisfying all previous bequests," is a specific legacy.

2. The dividends from the pay-day preceding the testator's death pass to the legatee.

JOSEPH H. BRADLEY for the trustees.

H. M. MORFIT for the executors.

M. Wright, by his will, dated May 15, 1847, after devising parts of his real estate, gave to his three nephews "$500 of the scrip or stock in the Chesapeake and Ohio Canal Company standing in my name; also the stock standing in my name in the Farmers and Mechanics' Bank of Georgetown, said stock being for $2,500; also $1,000 of the stock of the Franklin Insurance Fire Company of Washington standing in my name." He then gave the sum of "$2,000 to A., and $1,500 to B., and $300 to C." All these pecuniary legacies to be paid within three months after his death.

Then follows this bequest: " I give and bequeath, after the payment of the foregoing bequests and legacies, unto the Mayor, etc., of Washington, in their corporate character and as a body politic, the sum of $20,000 out of the 6 per cent. stock of that corporation standing in my name, if so much should remain, out of my personal estate after satisfying all previous bequests, in trust to the said corporate body, and by whatever name it shall at any time be known, to apply the interest thereof to and in aid of supporting the several now incorporated orphans' asylums in Washington, and in trust that upon the expiration of the time for redemption of said stock, or any part thereof, the said Mayor, etc., for the time being shall, by a public act of legislation or by a municipal act, reinvest or direct the reinvestment of said sum of $20,000, or such part of it as has been or may be redeemed, in good and sufficient security, yielding an interest at the rate of 6 per cent. per annum if practicable, so that such interest on said sum of $20,000 may be distributed and continue to be in equal shares to said orphans' asylums that are now incorporated, to the end of their corporate existence; and upon the determination of such corporate existence in or to said asylums, then to the said Mayor, etc., for the time being for the general purposes of said corporate bodies of said city, and to increase its general forever." He then devises all the residue of his estate to his three nephews in fee, and provides that if his Irish devisees could not take, his executors should sell and carry the proceeds to the general fund of his assets in their hands, and that a sum equal to the amount of such proceeds of sale shall be taken from his personal property, stocks and assets, and paid by his executors to said devisees. He then declares his estate to be a trust property for the payment of such devisees, and gave all his said property of every kind unto Adams and Trimble in trust (until the real estate shall be conveyed to the several devisees and the pecuniary bequests and stocks are paid or transferred to the legatees), to stand seized for said devisees and legatees, and convey and pay

and transfer said legacies and real estate to them. Adams and Trimble were appointed executors. The testator died May 23, 1847; the dividends were payable April 1 and July 1.

ORPHANS' COURT, *July* 18, 1848.

In this case it appears that the said Wright died in May, 1847, giving and bequeathing, after the payment of certain legacies mentioned, " unto the Mayor, Board of Aldermen and Board of Common Council of the City of Washington, in their corporate character and as a body politic, the sum of twenty thousand dollars ($20,000), out of the six (6) per cent. stock of that corporation, standing in my name, &c., in trust to the said corporate body, &c., to apply the interest thereto, and in aid of supporting the several now incorporated orphan asylums in the City of Washington in the District of Columbia, &c., &c.;" and it is urged by the said Larned & Carbery, in behalf of said asylums that the said institutions are entitled not only to the interest accruing on the said stock from and after the death of the said testator, *but also to the interest thereon for the portion of the quarter* which had expired at his decease.

Pecuniary legacies in general, where no time is designated in the will for payment, are not necessarily payable till the expiration of a year after the testator's death, that being the time allowed the executor for getting in the effects; and, therefore, in such case, interest does not begin to be payable till the year expired, and it has even been held in a case where the will directed that a legacy should be paid "as soon as possible," that interest upon it was only due from the end of the year from the testator's death.

This general rule of giving interest to the legatee from the expiration of the year is not to be extended or contracted upon slight inferences of intention.

If, however, the interest is to come *out of an estate devised* for that purpose; or should the phraseology of the will be.

such as to contribute a " specific " legacy, then, in each of these cases, *interest will be due from the testator's death.*

The legacy under consideration does *not* come *out of an estate devised for that purpose.*

It remains to be seen whether or not it is " specific," and the Courts appearing to have been generally averse to construe legacies " specific" except on clear intention, it will be necessary to look into the decisions as to what has been held to constitute a " specific" legacy, and then weigh well the language of the will.

A " specific" legacy has been defined to be " the bequest of a particular thing or money specified and distinguished from all others of the same kind, as a piece of plate, stock in the public funds, a security for money which would immediately vest with the assent of the testator."

It is " an immediate gift of the fund with all its produce, and is therefore an exception to the general rule, that a legacy does not carry interest till the end of a year after the testator's death."

It seems to be settled that *mere possession* by the testator, at the date of the will, of stock or annuities of equal or larger amount than the bequest will not, *without words of reference* or *an intention appearing on the will,* that the testator meant the *identical* stock of which he was possessed, make such bequest " specific," and it has been held that where legacies are given " out" of stock which the testator was possessed of at the date of the will, " they are not *prima facie* ' specific,' though, in the nature of ' specific' legacies, and their character will be determined by a regard to the *intention* of the testator."

The *intention* of the testator on the subject has always, in the construction of wills, is principally to be recognized.

Thus the word " my" preceding the word " stock" has been on several occasions adjudged sufficient to render the legacy " specific," for a bequest of " ten shares in the Bank of ———," the testator owning at the time that amount, is a *general,* and not a " *specific*" legacy; insert the word " my"

before the word " ten," so as to make the testator bequeath
" my ten shares in the Bank of ——," and the bequest be-
comes " specific."

Again, it has been also held, that if a testator bequeath a
sum of stock " *standing in my name,*" this is a " specific"
bequest.

The testator in this case gives twenty thousand dollars
($20,000) " out" of the six (6) per cent. stock of the corpo-
ration, &c. Thus far, as we have seen, the bequest, although
not *prima facie* " specific," is *in the nature of a specific legacy,*
it being given " out" of stock.

In continuation, the testator has not used the word " my,"
it is true, before the word " stock," but we find the bequest
to be of stock " *standing in my name,*" the expression neces-
sary (in the absence of the word " my") under the decision
last herein alluded to, to constitute a " specific" legacy. I
am clearly of opinion, therefore, that the language used
evidences an intention to bequeath the *identical* stock of
which the testator was possessed at the time of making the
will; and therefore the bequest is " specific."

The postponement *of payment* of this legacy until after
payment of other legacies and bequests mentioned prior
thereto in the will, should not, I think, operate against the
enuring to the benefit of the specific legatee, if the interest
accruing between the death of the testator and the time
specified for the payment of the legacy, for the following
reason : When legacies are given out of personal estate
consisting of outstanding securities, although these legacies
cannot be actually paid until the money due upon such se-
curities is actually gotten in, yet, by a rule that has been
adopted for the sake of general convenience, the personal
estate is held to be reduced into possession within a year
after the death of the testator; *interest* is payable upon such
legacies *from that time* unless some other period is fixed by
the will.

*Payment* of the *legacy* may be actually *impracticable* within
the year, yet, *in legal contemplation, the right to payment* exists

and carries with it *the right* to *interest* until actual payment.

Such, I apprehend, would be the legitimate conclusion in this case.

The bequest being "specific," *the right* to it vests upon the death of the testator, the *right* to the *principal* carries with it the *right* to the *interest*, therefore the *right* to the *interest* vests at that time, the *payment*, however, of both principal and interest *to be deferred* under the will until the legacies named shall have been satisfied.

In reference to the claim alleged in behalf of the said asylums to the interest accruing on the said stock, *for the portion of the quarter prior to the testator's death*, the Court can only remark, that the right to the *interest* cannot be older or extend farther back than the right to the *principal;* and that, as a " bequest" or " legacy" can have no legal existence prior to the death of the testator, the right to *interest* cannot extend beyond that period.

It is, therefore, adjudged that the said asylums are entitled to and shall receive said stock *from and after the death of the testator.*

NATH'L POPE CAUSIN,
*Judge of O. C.*

The legatees appealed.

The executors contend that upon appeal from the Orphans' Court, the appellate Court shall not only affirm the order of the Court below, but shall " direct in what manner it shall be changed or amended." Act of Md., 1778, ch. 101, sub-ch. 14, sec. 18. If the Orphans' Court went too far, it must be restricted.

If there is error in any point, though the judgment is right upon the particular point decided, the Court examines the entire record and reverses the judgment. Speake *vs.* Sheppard, 6 Harris & John., 81, 1 American Common Law 388.

BRADLEY for the appellants:

The Orphans' Court has decided that the legacy of

$20,000 to the corporation is a specific legacy, and that it carried interest from the death of the testator; but that dividends which accrued between his death and the next pay day belonged to his executors. Generally legacies bear interest only from the end of the year, and the rule is not to be extended; but a specific legacy is an exception, and carries all the interest or increase. A bequest of " *my* ten shares of stock" is specific, and the words " out of stock standing in my name" are equivalent    *    *    *    where it is $1,000 out of my stock." A gift of sheep will pass the lambs; so of a bond, the interest due and to become due. 2 Wm. Exrs., sec. 6, 876; 2 Vez., Jr., 639[1]; 1 Swanst., 557, Raven *vs.* Wait; Ladd *vs.* Ladd, Ala., 1824; 4 Vez., 471 n.

MORFIT for the appellees:

The executors transferred the stock three months after the death of the testator, and claimed the dividend to July 1. " The legacy was a pecuniary one, as it was to come out of the testator's general personal estate; it was essential to a specific legacy that it should be capable of delivery as a body, and therefore no interest was payable until the end of the year, or only from July 1, or certainly not beyond the testator's death. 2 Wm. Exrs., 880; 2 Vez., Jr., 640, Coleman *vs.* Coleman; 4 Bro. C. R., 347, Simmons *vs.* Valance; 4 Vez., 573, Innes *vs.* Johnston; 4 Vez., 747, Kirby *vs.* Potter; 7 Jo. C. R., 272, Walton *vs.* Walton; 6 Wheeler, A. C. L., 419; 4 Vez., 555, Chaworth *vs.* Buck; 8 Dana, 69, Smith *vs.* Lampton; 3 Dessau, 373, Codgal *vs.* Codgal; 9 Ves., 147, Dean *vs.* Test; 4 Mass., 208, 215, Donner *vs.* Swann; 1 Summer So. Ca., Sullivan *vs.* Winthrop; 2 Salk., 415, Small *vs.* Deane; 14 Serj. & R., 232[2]; Md. Act 1795, ch. 101, sub chs. 5, 7 and 10. Administrator must retain till expiration of twelve months.

* The law inclines against specific legacies, 2 Vesey, 639,

---

[1]Coleman *vs.* Coleman.    [2]Bitzer's Ex. *vs.* Hahn *et ux.* · * Notes appearing in case.

and note 2, 640; referring to stock to pay legacy is only demonstrative of the fund.

The wording must be very special to make a legacy special instead of general; Simmons *vs.* Vallance, 4 Brown, 347; Innes *vs.* Johnson, 4 Vesey, 573.

Legacies may be specific in one sense and general in another. Specific as out of a certain fund; Wallon *vs.* Watter, 7 Johnson's Ch., 262, note 555; Wheeler's Am. Com. Law, 420.

General or pecuniary as consisting only of a definite sum and not amounting to the fund itself, Chunorth *vs.* Beech, 4 Vesey.

Leaning against specific legacies in the case of Innes *vs.* Johnson, 4 Vesey, 572, there was the particular bond given.

Legacy of $1,000 out of my reduced annuities pecuniary, 4 Vesey, 747, Kirby *vs.* Potter, see note; the Courts are adverse to construing legacies to be specific; 2 Williams on Executors, 840; Smith *vs.* Lamton, 8 Dana, 69; Codgall *vs.* Codgall, 3 Dessans, 373; Nelson *vs.* Brunswick, 9 Vesey, 180, reversing Ashton *vs.* Ashton as to stock being a specific legacy.

Rule clear that interest commences only from the expiration of a year from the testator's death, unless there is a day named for it, the exception is in cases of children and minors, 6 Whaley Am. Law, 422.

The rule is laid down by the Circuit Court of the U. S. in Sullivan *vs.* Winthrop, 1 Summers C. C. Reports, that "interest commences in a pecuniary legacy at the expiration of a year from the death of the testator, whatever may be the position of the estate, unless some other period is specified.

Rule laid down for interest, Small *vs.* Dee, 2 Salk., 415; Bitzer's Exrs. *vs.* Hahn and wife, 14 Sergt. and Rawle, 232.

The State of Maryland allows legacy to be paid in part only on condition, see Act of Md., Nov., 1798, ch. 101, sub ch. 10, sec. 7. Payment of even a specific legacy requires a petition, see Sec. 8.

Legatees may, after twelve months, sue for his legacy upon giving bond, see Act of Md., April, 1718, ch. 5, sec. 2.

In general, pecuniary legacies bear interest only from the end of the year from the death of the testator, Hammond *vs.* Hammond, 2 Bland's Ch'y Rep., 306.

An annuity, like a pecuniary interest, carry interest only from the end of a year after the testator's death. Jones *vs.* Stockett, 2 Bland's Ch'y Rep., 409.

Chief Judge Cranch delivered the opinion of the Court: The question is whether this is a specific legacy of the stock, or a pecuniary legacy to be paid in current money out of the assets of the testator's estate ?

We think it is a specific legacy of the stock to the nominal amount of $20,000. The gift to the nephews is of $500 of the scrip in the canal company standing in his name; also the stock standing in his name in the Farmers and Mechanics' Bank; also $1,000 of the stock of the insurance company. These three stock legacies are clearly specific legacies. The sum mentioned only indicates the amount of the stock intended to be given. The gift to the corporation of "the sum of $20,000 out of the six per cent. stock standing in my name." This bequest differs from the former stock legacies by using the words "sum of" before the words "$20,000." This difference is unimportant. The words "sum of" $20,000 means the same as the words "$20,000." The sum is used as a limitation of the amount of the stock, which should pass by the bequest, if so much should remain. We are not satisfied with the reasons of the Master of the Rolls in Kirby *vs.* Potter, 4 Vez., 750. This legacy differs also from the other stock legacies in using the words "out of," viz: "The sum of $20,000 *out* of the six per cent. stock standing in my name if *so much* should remain out of my personal estate after satisfying all previous bequests." The words "so much" refer to the last noun, *i. e.,* stock. In Kirby *vs.* Potter the Master of the Rolls says: "But when the phrase is £1,000 out of my reduced bank annuities the sense is that the executor should raise £1,000 by selling so

much of that stock," and he relied much upon the fact that the legacy was to be paid in *one* month from the testator's death; whereas the pecuniary legacies were not payable until six months afterwards; from which it seems to me the rational conclusion would be directly the contrary. He admits it was a question of doubt. In the present case *all* the pecuniary legacies are made payable in three months after the testator's death; but no time is assigned for the payment of the stock legacies. If this was intended to be a pecuniary legacy the testator would probably have made it payable in three months, as in the case of the others. When he limited the legacy to the amount of 6 per cent. stock *which might remain*, not exceeding $20,000, it can not be supposed he intended to make up the deficiency (if any) in money. Again, the trustees are required to hold it until the stock should be redeemed, and then to re-invest the same in other *six per cent.* securities, and to apply the interest to the support of the asylums. It is impossible to execute the trust without considering it a specific legacy. The money to be re-invested is the proceeds of the redemption of the stock which they will have held from the testator's death to the redemption.

In the legacies left to the incorporated orphans' asylums in the City of Washington by the late Matthew Wright, I have been requested to decide whether or not these asylums are entitled to all the dividends upon the stock which became due and payable after the death of Mr. Wright. If there were funds otherwise sufficient to pay the debts of the estate, I am clearly of opinion that the asylums are entitled to all the dividends which became due and payable after Mr. Wright's death, and so decide.

Therefore the judgment of the Orphans' Court declaring the legacy to be specific is affirmed, and so much of the judgment as relates to the payment of the dividend from the last pay day reversed and ordered that the executors pay to the legatees the whole dividend accruing on said stock since the dividend day next before the death of the testator.