plaintiffs were engaged in the manufacture of cloaks. Immediately after the burglary, the plaintiff notified the defendant of the loss, and the defendant's representative called at the plaintiff's place of business and examined the bills which the plaintiffs had on hand for the stolen goods. The evidence shows that the plaintiff also kept a book of account. This book was used at the trial, and the plaintiff was permitted, without objection, to testify from it. The book itself was not offered in evidence by either of the parties and is not a part of the record which is now before us. In determining whether "the books and accounts," kept by the assured, were of the character required by the terms of the policy, it is proper to consider both the book of account and the invoices. If, from an inspection of both of these sources, the "actual loss" is ascertainable, there is no breach by the assured of the condition of the policy quoted above. Leiman v. Metropolitan Surety Co. (Sup.) 111 N. Y. Supp. 536.

In the present case, it appeared from the invoices that, shortly before the burglary, the assured had on hand goods of the value of $969.11, and that goods of the value of $648.66 were stolen. The plaintiffs admitted that all of the items, making up this aggregate amount, were not kept in their book of account, but testified positively that these items were taken from the bills on hand. While some confusion seems to have arisen in the course of the trial as to the exact amount of the goods on hand immediately prior to the burglary, the evidence, which included the actual bills for goods purchased, was sufficient to justify the conclusion reached by the trial justice. The court below gave judgment for the plaintiff for the sum of $500, and this amount is sanctioned by the evidence.

The case of Pearlman v. Metropolitan Surety Company, 127 App. Div. 539, 111 N. Y. Supp. 882, upon which the appellant relies, is not in point here, because in that case the books kept by the assured were not so kept as to make it possible to determine from them the amount of the loss sustained.

The judgment is affirmed, with costs. All concur.

---

(128 App. Div. 767.)

## In re GETMAN.

(Supreme Court, Appellate Division, Third Department.   November 11, 1908.)

1. WILLS (§ 750*)—CONSTRUCTION—LEGACIES—GENERAL OR SPECIFIC.
   A bequest of the use of "the $500" bequeathed to testatrix by her brother for life, the sum to be paid to another on the death of the first legatee, was a specific legacy in form, but it was a general legacy if the fund was not in such distinct form that it was identifiable when the will was made.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1936; Dec. Dig. § 750.*]

2. WILLS (§ 770*)—SPECIFIC LEGACIES—PRESUMPTIONS.
   The subject of a specific legacy being presumptively identifiable when the will was made, the burden is upon a legatee to prove that through facts existing when the will was made the legacy was general.
   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 770.*]

   Kellogg, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Surrogate's Court, Fulton County.

In the matter of the final settlement of the accounts of Lester Getman, Adelia Getman's executor. From a decree settling the account, the Central Presbyterian Church of Mayfield appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Jeremiah Wood, for appellant.
William C. Mills, for respondent.

SMITH, P. J. This controversy arises over the construction of the sixth clause of the will of Adelia Getman. That clause reads as follows:

"Sixth. I give and bequeath to Mrs. Eliza Pool of Gloversville, N. Y., the use of the $500 bequeathed to me by my brother Van Rennselaer Getman of Bowling Green, Ohio, and I direct my executors hereinafter named to safely invest the said $500 on good and approved security, and to pay over to the said Eliza Pool all of the interest and income therefrom annually for the rest of her natural life. After her death, I give and bequeath the said sum of $500 to the Presbyterian Church of the Village of Mayfield, Fulton County, N. Y. * * *"

The will was made upon July 27, 1893, and the testatrix died in August, 1906. The legacy of $500 given to her by her brother Van Rennselaer Getman was received somewhere from three to seven years prior to the making of the will. There is no evidence showing whether or not those moneys were separate and distinguishable at the time of the making of the will. There is evidence showing that after the making of the will the deceased had a long sickness, during which she expended large sums of money, and borrowed from a brother certain moneys which were owing to him at her death, and there is evidence that she stated during the last years of her life that she had expended in her sickness all she got from Van Rennselaer Getman, and that she had used all of that legacy for sickness expenses. She stated to a niece that she had used the money all up. There is further evidence to the effect that none of the property which was left by the decedent represented any moneys given to her by her brother Van Rennselaer Getman. The life beneficiary of this $500 fund died before the death of the testatrix.

It will not be questioned that if this be a specific legacy it has been addeemed by the expenditure of the moneys prior to the death of the testatrix. The contention of the appellant, however, is that the legacy is not specific, but is a general legacy, and that the intention of the testatrix was manifest to give a general legacy to the church to the extent of the moneys received in the legacy from her brother Van Rennselaer Getman.

The legacy clearly is in form specific; it refers to a certain fund. If that fund were definable and traceable at the time of the making of the will, it can hardly be questioned that to that fund, and to that fund only, the legacy would apply. If, however, the proof showed that these moneys were not in such distinct form that they could be traced and identified at the time of the making of the will, then the only reasonable interpretation of the will would be that it was intended as a

general legacy given in honor of her brother, and to the amount of the moneys received from him. Furthermore, in my judgment, inasmuch as the legacy was in form specific, the presumption must hold that the subject thereof was in such form as that it could be identified at the time of the making of the will, and the burden of proof lies with the legatee to show that a legacy specific in form was in fact a general legacy, by reason of the facts existing at the time of the making of the will. This presumption as to the possibility of the identification of the moneys at the time of the making of the will would seem to be strengthened by her declarations thereafter made that those moneys had all been expended in her sickness.

For those reasons we think the decree of the surrogate is right, and should be affirmed, with costs.

Decree of the surrogate affirmed, with costs. All concur, except· KELLOGG, J., who dissents.