Estate of JOHN J. O'GORMAN, Deceased.

[No. 2007 (N. S.); April 8, 1910.]

**Will—Bequest of Interest in Estate—Acquisition of Interests of Other Beneficiaries.**—A bequest in a will of all the testator's "interest in the estate" of a named decedent will be construed to pass not only such interest as vested in him as a beneficiary of such estate, but also such further interests as he may have acquired in the property thereof by succession or bequest from other beneficiaries, where such estate was in process of administration at the time of the death of the testator, and his interests therein constituted the whole of the property left by him.

**Will—Specific Legacies are not Favored by the Law,** and in cases of doubt legacies are held general or demonstrative, rather than specific; the reason for this is that specific legacies are not liable for the debts of the testator, and on the other hand they fail or are adeemed if the thing or fund is not in existence at the time of the death of the testator.

**Will—Specific Devise.**—A devise of an interest in an estate of a deceased person is specific.

Petition by legatees for final distribution.

P. V. Ross, for the legatees.

Emil Pohli, for the executor.

J. A. Kennedy and John J. McDonald, for the heirs.

COFFEY, J.—This case involves the interpretation of the last will of John J. O'Gorman, deceased, which is as follows:

"I hereby make this my last will and testament and declare all previous wills or assignments of interest null and void. I hereby bequeath and bequest all my interest in and to my interest in the estate of Thomas O'Gorman, deceased. To be distributed as follows: Unto Edward O'Sullivan, two hundred and fifty ($250) dollars; to Mrs. Dora Singer, widow, the sum of $250.00; to Mrs. Kate Cummings, the sum of $250.00; to Mrs. Mary Wirtz, a married woman, the sum of $250.00; to Mrs. A. Klinner, a married woman, the sum of $250.00; to Mrs. Catherine La Grave, widow, the sum of $250.00; to James O'Connor, the sum of $250.00, due to him

for money advanced to me; unto Bernard P. La Grave, the rest and residue of my interest in the estate of Thomas O'Gorman, deceased, for money previous advanced to me by said Bernard P. La Grave, in the sum of $500.00.''

The estate owned by John J. O'Gorman, the testator, at the time of his death, was originally the community property of his parents, Thomas O'Gorman and wife. Thomas O'Gorman died in 1873, leaving a will by which he gave one-sixth of the property to his son, John J. O'Gorman, the present testator. Subsequently the widow and other heirs of Thomas O'Gorman died, leaving John J. O'Gorman as his sole surviving heir. Some of the estates of these decedents were never administered; but two of them, the estate of James Russell Burke and the estate of Thomas O'Gorman, were pending at the time when John J. O'Gorman, the present testator, made his will. This property, which was all real estate, was the only property left by John J. O'Gorman.

From this statement of facts the legatees make this contention: When John J. O'Gorman made the above will he was the owner of the whole estate originally belonging to Thomas O'Gorman. The entire title, though not yet judicially established, had, through the death of the other members of the family, been gathered to him as the sole surviving heir. With his property in this condition John J. O'Gorman made his will wherein he said: ''I hereby bequeath and bequest all my interest in and to my interest in the estate of Thomas O'Gorman, deceased, to be distributed as follows'': What did he mean by his ''interest in the estate of Thomas O'Gorman''? Counsel for the heirs contend that he meant only the one-sixth of the estate that came to him directly by the will of Thomas O'Gorman, and that he died intestate as to the rest of his estate. But, argue the legatees, the law raises a strong presumption against partial intestacy.

A man who makes a will at all may reasonably be supposed to intend to dispose of his whole estate. Would it not be a strange thing for this testator to will an undivided one-sixth of his estate, leaving the other five-sixths to pass by the law of succession, especially when he makes the testamentary

gifts so large that they cannot be realized except in small part, from one-sixth of the estate? A layman in drawing a will (and certainly no lawyer drew this one) may very naturally have described the entire estate of the testator as his "interest in the estate of Thomas O'Gorman, deceased," for all of the property of the testator came, directly or indirectly, from the Thomas O'Gorman estate; the administration of the estate of Thomas O'Gorman was still pending; the estate of Thomas O'Gorman was still intact, never had been distributed or divided in any way; and more than all the estate of Thomas O'Gorman had, in its entirety, been gathered to the testator at the time he executed his will. The legatees conclude, therefore, that the testator meant to dispose of his entire estate, and not merely the small fraction thereof which came to him by the will of Thomas O'Gorman.

If this interpretation of the will be correct, the heirs cannot share in the estate, but all goes to the legatees; but if the court finds that the testator intended to dispose of only that part of his estate which he took by the will of Thomas O'Gorman (which is only about one-sixth of the property), then the question arises whether the bequests in the present will are specific, or whether they are demonstrative or general. If they are specific they must, for the most part, fail, for the one-sixth of the estate amounts to only $344.09, while the legacies amount to $1750, excluding interest. If they are demonstrative or general, then they are payable out of the general assets, and are saved, but they exhaust the estate, so that nothing remains for the residuary legatees and the heirs.

A specific legacy is defined by section 1357 of the Civil Code as "a legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator." The same section then defines demonstrative legacies, and in conclusion declares that all other legacies are general legacies.

Specific legacies, it is well understood, are not favored by the law, and in cases of doubt legacies are held general or demonstrative, rather than specific; the reason for this is that specific legacies are not liable for the debts of the tes-

tator, and on the other hand they fail or are "adeemed" if the thing or fund is not in existence at the time of the death of the testator: Nusly v. Curtis, 36 Colo. 464, 118 Am. St. Rep. 113, 85 Pac. 846, 10 Ann. Cas. 1134, 7 L. R. A. (N. S.) 592; 18 Am. & Eng. Ency. of Law, p. 715.

In Estate of Woodworth, 31 Cal. 599, the will left all the testator's personal estate and one-half of his real estate to his brother. Both the bequest and the devise were held general and not specific; and it was also held that the common-law rule that all devises of real property are specific has been abrogated in California. The court said: "In a certain sense it may be said that legacies of this kind are specific; as a legacy of all of the testator's cattle, or all of his personal property possessed at his death; but it is not specific unless you can fix on the individual thing given."

If a bequest of all of testator's personal property or a devise of all of testator's real property is not specific, certainly much less can it be maintained that a devise of an interest in an estate, as in the case at bar, is specific. There is certainly no individual thing of any kind in this case that can be said to be devised or bequeathed.

In the case of Abila v. Burnett, 33 Cal. 667, a provision in the will that "my said wife shall receive one-half of all my property of which I may die seised" was declared not to be a specific bequest or devise.

If under a will leaving all the testator's personal estate and one-half of his real estate to his brother, both the bequest and devise are general and not specific (Estate of Woodworth, 31 Cal. 599); and if a provision in a will "my said wife shall receive one-half of all my property of which I may die seised" (Abila v. Burnett, 33 Cal. 667), does not constitute a specific bequest, how can it be said that a gift of "an interest in an estate" (in the case at bar an undivided one-sixth interest in land) is a specific legacy or devise? If a gift of "all the personal property" and "one-half the real property" is a general legacy and devise, certainly a gift in the general words of "an interest in an estate" (here an undivided one-sixth interest in land) must with greater reason be a general devise or legacy and not a specific one.

Under these principles and authorities the testamentary gifts in the case at bar are not specific, and hence are not adeemed by the failure, partial or total, of the fund from which they are to be paid, but are payable from the general assets, and will exhaust the estate so that nothing remains for the heirs and residuary legatees. Therefore the estate of John J. O'Gorman should be distributed to the following legatees (to the exclusion of his heirs at law and the residuary legatee); Edward O'Sullivan, Dora Singer, Kate Cummings, Mary Wirtz, Catherine La Grave and James O'Connor.

The heirs contend that the intention of John J. O'Gorman, as expressed in his will hereinbefore set forth, was to dispose of only that part of his property which came to him directly from the estate of Thomas O'Gorman by virtue of the latter's will, which consists of about one-sixth of the estate of the present testator and amounts to three hundred and forty-four dollars and nine cents; that as to the rest of his estate John J. O'Gorman intended to die intestate; and further that his will creates specific devises or bequests which are subject to ademption.

In their argument the heirs declare that the intention of the testator must be deduced from the face of the will, and that the question is not "what did he mean," but "what do his words mean"; and that if the legal effect of his expressed intent is intestacy it will be presumed that he designed that result; Estate of Young, 123 Cal. 337, 55 Pac. 1011. They argue, further, that the gifts in the will are specific, not general or demonstrative, "because there is willed a particular thing specifically distinguished from all others of the same kind belonging to the testator, to wit, his interest in the estate of Thomas O'Gorman," citing section 1357 of the Civil Code; Tomilson v. Bury, 145 Mass. 346, 1 Am. St. Rep. 464, 14 N. E. 137; Millard v. Bailey, L. R. 1 Eq. 378; Evans v. Hunter, 86 Iowa, 413, 41 Am. St. Rep. 503, 53 N. W. 277, 17 L. R. A. 308; In re Jeffery, L. R. 2 Eq. 68; Choate v. Yeats, 1 Jac. & W. 102; Young v. McKinnie, 5 Fla. 542; Bailey v. Wagner, 2 Strob. Eq. (S. C.) 1; Pell v. Ball, 1 Speer Eq. (S. C.) 48; Bothamley v. Sherson, L. R. 20 Eq. 304; Harper v. Bibb, 47 Ala. 547; Kelly v.

Richardson, 100 Ala. 584, 13 South. 785; Appeal of Smith, 103 Pa. 559; Hayes v. Hayes, 1 Keen, 97; Estate of Woodworth, 31 Cal. 599; Schouler on Executors, sec. 461.

The argument of the heirs is, therefore, that the testator intended to dispose of only that part of his estate which came to him directly by the will of Thomas O'Gorman; that the gifts in the will of the present testator are specific, and confined to the property that came to the testator by the will of Thomas O'Gorman; and that as to the remainder of his property (which is about five-sixths of his entire estate), the testator died intestate. Hence, the heirs contend, that the legatees are entitled to only $344.09, and that the heirs are entitled to the remainder of the estate of John J. O'Gorman.

The court is of the opinion that the position of the heirs is untenable, but that the contention of the legatees is correct and must be given effect. The petition of the legatees is granted; let a decree be drawn accordingly.

Dated this 8th day of April, 1910.

---

This Decision was affirmed by the supreme court in 161 Cal. 654, 120 Pac. 33.

### SPECIFIC, DEMONSTRATIVE AND GENERAL BEQUESTS DEFINED AND DISTINGUISHED.

Whether Devises are Specific or General.—Such a discussion as comes within the scheme of an annotated law report hardly calls for any going into first principles, and a treatise on the present topic need therefore begin with a statement no more elementary than that, of testamentary dispositions, that referring to real property is called a devise and that referring to personal property a bequest or legacy. And this statement, being made, is at once to be confessed as submittting no infallible rule either, for in the reports—even those that reflect the learning of the long-departed sages—to which we turn as to the fountains of the law, we find often an indifference to applying those words according to their strictness. Perhaps, then, the statement should be that a testamentary disposition of real estate is usually called a devise, and one of personal estate usually a bequest. These devises and bequests are not all of a single character, but admit of distinctions.

"Every specific devise, by its very nature and form, plainly shows that the testator means that the devisee shall have the land given free from liability to contribute to charges not fastened upon it": Anderson's Exrs. v. Anderson, 31 N. J. Eq. 560. To define a general devise would be, of course, to state the converse of that proposition.

The importance given by the courts to specific devises and bequests is mainly on account of the immunity—not absolute, of course—these dispositions enjoy from the payment of the debts of the estate and the charges under the will. The order of resort for payment in this connection under the common law is thus stated by Parsons, C. J., in an old Massachusetts case, he giving as his authority the English case of Donne v. Lewis, 2 Brown C. C. 257: "The general rule in equity for the marshaling of assets is thus settled: (1) The personal estate, excepting specific bequests, or such of it as is exempted from the payment of debts; (2) The real estate which is appropriated in the will as a fund for the payment; (3) The descended estate, whether the testator was seised of it when the will was made or it was acquired afterward; (4) The rents and profits of it received by the heir after the testator's death; (5) The lands specifically devised, although they may be generally charged with the payment of the debts, but not specially appropriated for that purpose": Hays v. Jackson, 6 Mass. 149.

· Another thing is to be said about the common law in this connection, and that is that, agreeably to it in the administration of estates, a simple contract debt could not be enforced as against lands, the latter, unless so charged under the will expressly, being susceptible to be made a fund for satisfying only specialty debts. Another preliminary remark is that under the common law all devises of land were specific.

**All Devises Specific at Common Law.**—At common law the doctrine obtained that a will was in the nature of a conveyance, and the first principle of land transfers was couched in the old quaint phrase, "No man can convey that which he hath not." The will spoke of the time of its making, wherefore after-acquired lands were presumed not to be in a testator's mind, and certainly he knew what he had. The doctrine did not come from the civil law and seems to have been wholly insular. Lord Mansfield, to whom it was made a reproach that he dragged the civil law into English jurisprudence on the slightest emergency, was helpless here. In Pistol v. Riccardson, 3 Doug. 361, speaking of the will before the court, he said the rule might as well have been declared the other way, but the doctrine could not be shaken.

· To take up an American case: "The soundness of this doctrine—its logical correctness—is manifest when reference is had to that rule of the common law by which wills were held to speak as of the date of their execution, and to embrace only such property as then belonged to the testator and was within the terms of the testament. Under that rule, as has been well said, 'a devise of lands operated, in the nature of an appointment upon the lands held by the testator at the time of its execution. Hence, whether the land devised was described specifically or only by way of residue, for practical purposes it was

equally well ascertained,' since the residue then held by the testator was capable of identification, and was already, indeed, as fully identified in his mind and intention as the part segregated therefrom by particular description, he being held to know what property he is seised of.. And therefore the doctrine we have stated, that even residuary devisees are specific, because it is to be assumed the testator had the residue of the land then held by him in his mind, and to have intended it to go to the residuary devisee as specifically as he had intended the lands particularly described to go to other devisees. Some modification of this doctrine has been admitted in American courts, in view of statutory provisions which have the effect of making wills speak from the death of the testator instead of from their execution. Our statute on the subject is the following: 'Every devise made by a testator, in express terms, of all his real estate, or in any other terms denoting his intention to devise all his real property, must be construed to pass all the real estate he was entitled to devise at the time of his death': Code, sec. 1948. Considering that testators could not have had property acquired after the execution of their wills in their minds at that time, and that it is only by force of statute, and wholly apart from the testator's intent that such property passes at all, and hence that they could not and did not specifically intend that residuary devisees should take such property, the tendency of American decisions has been—though the rule is different under similar statutory provisions in England—to hold that no devise of after-acquired real estate is specific unless the land is described with sufficient particularity to enable the devisee to identify it": Kelly v. Richardson, 100 Ala. 584, 13 South. 785, citing Farnum v. Bascom, 122 Mass. 282; In re Woodworth's Estate, 31 Cal. 595.

American Tendency to Treat Devises and Bequests by One Rule.— The English rule that all devises of real estate are specific, the Massachusetts court has said, probably never obtained in this state, and certainly has no present existence here: Farnum v. Bascom, 122 Mass. 282. In the very late case of Wilts v. Wilts (Iowa), 130 N. W. 906, the controversy was whether the debts of the estate should be paid from the proceeds of the land generally or of that portion that descended to the heirs, the will having provided for the payment of the testator's debts, devised and bequeathed one-third of all his real and personal property to his wife, and stopped there. The debts were not inconsiderable, there being nearly a thousand acres of land in the estate, and much of it encumbered with mortgages. The court said: "Here the language of the will leaves no doubt but that the testator intended to dispose of after-acquired real estate, and the evidence fails to show whether that left was acquired before or after the execution of the will. In executing the will then he could not well have known the real property in which he undertook to dispose of an undivided third, and in such a case the reason for saying all devises are specific fails. Necessarily the disposition of after-acquired

land might be general, and would be in a case like this. The subject was considered in Re Estate of Woodworth, 31 Cal. 595, the court, after quoting a statute authorizing the disposition of after-acquired real estate, saying: 'Now, a will made under this provision, by which a party should devise all the land of which he should die seised or possessed, it is obvious, would have none of the characteristics before stated of a specific devise. A party might sell and convey land owned at the date of the will, and with the proceeds purchase others, and repeat the operation continually, and those lands owned at the moment he should happen to die would pass by the will; would take the place of those conveyed. Personal and real estate would stand upon the same footing in this respect; a devise of all one's personal and all one's real estate of which he should die possessed would be equally general and operate precisely alike. The grounds upon which a devise of real estate was held to be always specific have ceased to exist.' "

The court further quotes the California case as adopting the words of Judge Redfield, in his work on Wills, to the effect that the rule that all devises of real estate are specific prevails only where it is the law that one may not by will pass real—as he may personal—property acquired, after executing the instrument; also that, under late English statutes and those of most of the states here, that law no longer stands in the old country and only exceptionally in this. The court also cites Blaney v. Blaney, 55 Mass. (1 Cush.) 107.

We need go no further, then, than to the Alabama case already cited for the rule in vogue generally here in this connection; and that is, that all devises are specific unless they are of after-acquired lands, and as to these they are general unless the property devised is so described as to admit of identification by the devisee. Even a residuary clause may carry a specific devise: Kelly v. Richardson, 100 Ala. 584, 13 South. 785; to the same effect, see In re Estate of Woodworth, 31 Cal. 595; Corrigan v. Reid, 40 Ill. App. 404; Henderson v. Green, 34 Iowa, 437, 11 Am. Rep. 149; Wilts v. Wilts (Iowa), 130 N. W. 906. And in Walker v. Parker, 38 U. S. (13 Pet.) 166, 10 L. Ed. 109, it was held that a devise of "the balance of my real estate, believed to consist of lots number six," etc., was a specific devise.

American Cases of Devise of Real Estate.—It was held in Maine that the devise of the residue of real estate, after the happening of a contingency or after certain objects have been accomplished by the disposition or appropriation of a portion of it, is not specific but general; Bradford v. Haynes, 20 Me. 105. A man devised "the use, improvement and income" of a certain lot of land on condition the devisee pay all taxes, etc., and devised a remainder over. This was held to be a specific devise: Farnum v. Bascom, 122 Mass. 282. To the same effect, generally, see McFadden v. Hefley, 28 S. C. 317, 13 Am. St. Rep. 675, 5 S. E. 812. The doctrine that a life estate may be the subject of a specific devise is that of the old case of

Long v. Short, 1 P. Wms. 403. A testatrix gave and bequeathed her home and lot in the village of Dundee if, as she said in the will, she should be possessed of one at her death; or, if she was not possessed of one, ordered her executors to pay to the devisees two thousand dollars on condition that said devisee pay an annuity of sixty dollars to her brother. There followed seven bequests of one hundred dollars each and a provision that if her estate exceeded the amount of these the executors should divide the excess among "said persons pro rata," and that in case of a deficiency each of "the above bequests" should share it in the same proportion. It was held that the devise of the house and lot was specific: In re White, 125 N. Y. 544, 26 N. E. 909. A testator devised a particular field to an adopted daughter, and another field to his nephew—the latter subject to the devisee's paying a bequest of five hundred dollars to a niece; and devised and bequeathed the rest of the land and estate to his wife, subject to a bequest of one hundred and fifty dollars to his adopted daughter. All those devises were held to be specific: In re Pitman's Estate, 182 Pa. 355, 38 Atl. 133. A testator devised a house and such ten adjacent acres of land as the executors should allot to go with it. It was held to be a specific devise: Wood v. Hammond, 16 R. I. 98, 17 Atl. 324, 18 Atl. 198. A testatrix stated in her will that she was or might be entitled to an interest in the estate of a deceased person, and thereupon devised such interest. It was held that the devisee was specific, notwithstanding it was indefinite as to value: In re Tillinghast, 23 R. I. 121, 49 Atl. 634.

An important California decision on this question is Estate of Bernal, 165 Cal. 375, Ann. Cas. 1914D, 26, 131 Pac. 375. That a residuary clause is general as to realty passing thereby, see In re Ratto, 149 Cal. 552, 86 Pac. 1107; Estate of Painter, 150 Cal. 498, 11 Ann. Cas. 760, 89 Pac. 98; Hays v. Jackson, 6 Mass. 149; Anderson v. Anderson, 31 N. J. Eq. 560. That a residuary devise is specific, provided no after-acquired real estate is included therein, see Kelly v. Richardson, 100 Ala. 584, 13 South. 785; Wallace v. Wallace, 23 N. H. 149; Floyd v. Floyd, 29 S. C. 102, 7 S. E. 42.

**Specific Gifts of Personalty.**—The classification of legacies under the earlier English decisions seems to have been into two sorts—specific and general. It was said by Lord Eldon, in Sibley v. Perry, 7 Ves. 522, with reference to the bequest there under consideration, "He gives first one thousand pounds stock specifically; so that the legacy would fail if he should sell out the stock, though nothing could be more contrary to his actual intention than that if he had sold out the stock and placed the money upon a mortgage the legacy should have failed. I have no doubt in private that directing a transfer of stock he means to give what he has; but there is no case deciding that it is specific without something marking the specific thing, the very corpus; without describing it as standing in his name or by the expression of 'my stock.' "

In Purse v. Snaplin, 1 Atk. 414, a testator having, in fact, five thousand pounds Old South Sea annuity stock, bequeathed that amount of that description of stock to each of two persons. There were ample funds in the estate. The case came up before Lord Chancellor Hardwicke, and it is toward the latter part of his decision that the words occur most pertinent to the point now in discussion: "In 2 Domat., title Legacies, p. 159, sec. 18, devise of a thing not in rerum natura during the testator's life held good. These resolutions are grounded on the rule of the civil law in regard to legacies consisting in quantity and number; and there is a great difference between the testator's describing the quantity in general and his determining and particularizing it by the word 'mine.' The third objection is that this legacy to Robert Purse is a specific legacy, and therefore if not found among the testator's assets must fail. To this I answer that there are two kinds of gift which by us are reckoned under the name of specific legacy. First, where the particular chattel is specifically described and distinguished from all other things of the same kind: Lawson v. Stitch, 1 Atk. 508. Something of a particular species which the executor may satisfy by delivering something of the same kind, as a horse, etc. The first kind may be more properly called an individual legacy, and if such so bequeathed is not found among the testator's effects it fails (Drinkwater v. Falconer, 2 Ves. 624); or if given first to A and then to B, they must divide it; or if it is disposed of in the life of the testator it is an ademption of such legacy. But this gift is not confined to the particular five thousand pounds Old South Sea annuity stock, but the second, which is of a more liberal nature; it is a legacy consisting in quantity and number, and not confined to the strictness of the first rule." The lord chancellor rather confused the subject by his execution of "two kinds of gift which by us are reckoned under the name of specific legacy," for later in the case he declares the legacies there to be general. It is said in Williams on Executors (section 1021), "A legacy of quantity is ordinarily a general legacy, but there are legacies of quantity in the nature of specific legacies, as of so much money with reference to a particular fund for payment. This kind of legacy is called by the civilians a demonstrative legacy." In Ashburner v. Macguire, 2 Brown C. C. 108, a case which, according to Arden, M. R., in Chaworth v. Beach, 4 Ves. Jr. 555, Lord Thurlow took two years to decide, the latter, referring to the bequest under consideration, spoke of whether it "was given as a specific legacy, which depends on this, whether the manner in which the sum is mentioned turns it to a pecuniary legacy or, as the civilians call it, a demonstrative legacy; that is, a legacy in its nature a general legacy, but when a particular fund is pointed out to satisfy it." To the same effect, see Nusly v. Curtiss, 36 Colo. 464, 118 Am. St. Rep. 119, 10 Ann. Cas. 1061, 85 Pac. 846, 7 L. R. A. (N. S.) 592. As Lord Cranworth said of a demonstrative legacy, "it is so far general, and differs so much in effect from one properly

specific that if the fund be called in or fail, the legatee will not be deprived of his legacy but be permitted to receive it out of the general assets, yet the legacy is so far specific that it will not be liable to abate with general legacies upon a deficiency of assets": Lord Cranworth, in Tempest v. Tempest, 7 De Gex, M. & G. 470.

As would be the case with any other thing under discussion, the first point to be determined refers to nature and quality. In short, what is a specific bequest? A bold answer to the question would be "nobody seems to know," and yet it would not be an answer very far astray; but perhaps it would be safer to say it has been found difficult by the judges to define it so closely as to make it absolutely unmistakable. Said Sir George Jessel, speaking on this subject: "In the first place, it is a part of the testator's property; a general bequest may or may not be such. A testator who gives one hundred pounds money or one hundred pounds stock may not have either the money or the stock, in which case executors must raise the money or buy the stock; or he may have money or stock to discharge the legacy. A general legacy has no reference to the actual state of the testator's property, it being only supposed that he has sufficient property with which to satisfy it, while in the case of a specific bequest it must be a part of the testator's property itself. In the second place, it must be a part emphatically as distinguished from the whole. It must be what sometimes has been called a severed or distinguished part. It must not be the whole in the meaning of being the totality of the testator's property, or the totality of the general residue of his property after having given legacies out of it. But if it satisfy both conditions, that it is a part of the testator's property itself, and is a part as distinguished from the whole or the whole of the residue, then it appears to me to satisfy everything that is required to treat it as a specific legacy. I hope that the definition which I have attempted to give will be more successful than those that have been attempted before, but I can only express that hope with some degree of trepidation": Sir George Jessel, M. R., in Bothamley v. Sherson, L. R. 20 Eq. 304. The master of the rolls cites many of the later English cases as giving warrant for the view above set forth.

In Robertson v. Broadbent, 8 App. Cas. 812, Lord Chancellor Selborne defined a specific legacy to be "something which a testator, identifying it by a sufficient description and manifesting an intention that it shall be enjoyed in the state and condition indicated by that description, separates, in favor of a particular legatee, from the general mass of his estate." In the same case Lord Fitzgerald, speaking of the bequest there under consideration and at the same time of the words last above quoted, said: "The gift is not specific within the definition so carefully expressed by the lord chancellor," as if, to the knowledge of his colleagues, that officer had labored with his words to make them conform precisely to what it was he was attempting to define. Lord Blackburn, who sat in the case with the others, said

that if it was necessary to give a definition of a specific legacy, he did not know if he could come any nearer than what the lord chancellor had said, but he added, "I do not, however, like to bind even to saying that this is a precise definition." These efforts are two only out of the numerous ones put forth by the English judges to give a clear outline of just what is meant by the term.

In America the courts, some of them, have been content to adopt here and there from this numerous store, while others, less diffident than Lord Blackburn, have worked out fresh definitions. Thus, in Alabama: "A specific legacy is one that can be separated from the body of the estate and pointed out so as to individualize it and enable it to be delivered to the legatee as a thing sui generis. The testator fixes upon it, as it were, a label by which it may be identified and marked for delivery to the owner, and the title to it as a separate thing vests at once, on the death of the testator, in the legatee": Harper v. Bibb & Falkner, 47 Ala. 547. In California the subject has been made a matter of statute. "A legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator is specific; if such legacy fails, resort cannot be had to the other property of the testator": Cal. Civ. Code, sec. 1357. In Colorado: "A specific legacy is a gift by will of a specific article or particular part of the estate, which is identified and distinguished from all others of the same nature and is to be satisfied only by the delivery and receipt of the particular thing given": Nusby v. Curtiss, 36 Colo. 464, 118 Am. St. Rep. 113, 10 Ann. Cas. 1134, 7 L. R. A. (N. S.) 592, 85 Pac. 846. In Iowa: "To be specific, a gift, whether of real or personal property, must be of a designated article or specific part of the testator's estate which is identified and distinguished from all other things of the same kind which may be satisfied by delivery of the specific thing or portion": Wilts v. Wilts (Iowa), 130 N. W. 906. In Kentucky, "A specific legacy is defined to be the bequest of a particular thing specified and distinguished from all other things of the same kind": Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437, quoting from Lilly v. Curry's Exr., 69 Ky. (6 Bush), 590, which quotation was a quotation in turn from Wills on Executors, defining the subject; Wills on Executors, 944. In Maine, "A specific legacy is a bequest of a specific thing or fund that can be separated out of all the rest of testator's estate of the same kind so as to individualize it and enable it to be delivered to the legatee as the particular thing or fund bequeathed": Palmer v. Palmer's Estate, 106 Me. 25, 19 Ann. Cas. 1184, 75 Atl. 130. In Rhode Island, "A specific legacy, as the term imports, is a gift or bequest of some definite, specific thing, something which is capable of being designated and identified": In re Martin, 25 R. I. 1, 54 Atl. 589, quoting from Dean v. Rounds, 18 R. I. 436, 27 Atl. 515, 28 Atl. 802. The American and English Encyclopedia of Law gives as a definition: "A specific legacy or devise is a gift by will of a specific article or part of the testator's estate

which is identified and distinguished from all other things of the same kind and which may be satisfied only by the delivery of the particular thing": 18 Am. & Eng. Ency. of Law, 2d ed., 714.

This language has been adopted by the courts of many of the states in preference to framing definitions out of words of their own or resorting to the English decisions. Among the cases where the courts have either so adopted or so resorted are: Kelly v. Richardson, 100 Ala. 584, 13 South. 785; Broadwell v. Broadwell's Admr., 4 Met. (61 Ky.) 290; In re Matthews, 122 App. Div. 605, 107 N. Y. Supp. 301; Crawford v. McCarthy, 159 N. Y. 519, 54 N. E. 277; Smith's Appeal, 103 Pa. 559; In re Snyder's Estate, 217 Pa. 71, 118 Am. St. Rep. 900, 10 Ann. Cas. 488, 11 L. R. A. (N. S.) 49, 66 Atl. 157; In re Campbell's Estate, 27 Utah, 361, 75 Pac. 851; Morriss v. Garland's Admr., 78 Va. 215. To this much they all go, that to create a specific legacy the testator must identify the property bequeathed: Dryden v. Owings, 49 Md. 356; United States Fidelity & Guaranty Co. v. Douglas' Trustee, 134 Ky. 374, 120 S. W. 328.

From so many expressions as to what the thing is, no one of the attempted definitions departing in sense very far from another, some idea on the subject, more or less clear, must remain in the mind of the reader; but it must have been seen meantime that these specific bequests are not all of the one sort.

The passage in Roper on Legacies (volume 1, page 149) to which the court in Broadwell v. Broadwell's Admr., 4 Met. (61 Ky.) 290, went for its definition is, "A regular specific bequest may be defined, the bequest of a particular thing or money, specified and distinguished from all others of the same kind, as a horse, a piece of plate, money in a purse, stock in the public funds, a security for money which would immediately vest with the assent of the executor." It is evident that these bequests cannot all be embraced by one description. We have seen that Lord Hardwicke held bequests to be "individual bequests," which were specific, and "bequests of number and quantity," which were general.

And yet there are instances of bequests of number and quantity being held to be specific bequests. In fact, as was said in Appeal of Balliet, 14 Pa. 451, "the distinction between a specific and a pecuniary legacy and a specific and a demonstrative legacy is sometimes very nice." For an illustration let us turn to a modern Rhode Island case: "The legacy, in the twelfth clause, of two hundred and thirty shares in the Ashland Cotton Company, although not described by the testatrix as 'my' two hundred and thirty shares, seems to us to be a specific legacy. It is true that the law does not favor specific legacies, and that, where stocks, bonds and other securities are disposed of by the will but it does not designate them as composing a part of the testator's estate and the legacy may be satisfied by delivery to the legatee of any securities of the kind and the value or amount specified, a preponderance of authority favors its being a

general legacy, though the testator owned securities of the kind speci-
fied, and corresponding exactly to the number of shares or amount
bequeathed: 18 Am. & Eng. Ency of Law, 2d ed., 713. The authori-
ties however, are by no means uniform: 1 Roper on Legacies, s. pp.
204–224. The cardinal rule is to ascertain and follow the intent of
the testator, and, inasmuch as wills vary so much in their surround-
ing circumstances, each will has to be judged largely by its own at-
tendant circumstances. In Pearce v. Billings, 10 R. I. 102, the tes-
tator gave away of certain bank stocks largely in excess of what he
owned at his death or had ever owned of such bank stocks. The
court decided such legacies were general, and not specific, and that
the number of shares given away merely furnished a standard of
measurement of the amount of a pecuniary gift which was to be fixed
by the value of the stated number of shares at the time the legacies
would become payable, viz., a year after the testator's decease—an
appraisal then to be made. Undoubtedly the fact of the testatrix
having an odd number of shares of the Ashland Cotton Company at
the date of her death, exactly corresponding with the number given
away, was a circumstance to be taken into account; and that, taken
in connection with all the circumstances of this particular will, satis-
fies us that the testatrix intended that the legatee under the twelfth
section was to have that particular stock. In our opinion the legacy
under the twelfth section was a specific one": In re Martin, 25 R. I.
1, 54 Atl. 589.

And yet similar reasoning did not lead Lord Eldon to a similar
conclusion in Sibley v. Perry, 7 Ves. 522, already cited. There the
testator having, in the will, directed a transfer of three per cent
consols three months after his decease, gave several other legacies of
stock "as aforesaid." The lord chancellor expressed himself thus:
"I have no doubt in private that, directing a transfer of stock, he
means to give what he has; but there is no case deciding that it is
specific without something marking the specific thing, the very corpus;
without describing it as standing in his name or by the expression,
'my stock.'"

There was another specific legacy, so decided to be, in Re Martin,
which we shall come to presently, the subject matter of which must
be said to have been quite intangible, which quality certainly cannot
comport with the idea of an article at all, much less an article that
can be fixed upon, which, as intimated in Barton v. Davidson, 73 Ill.
App, 441, is indispensable. It must be, then, that in cases here and
there something is to be considered outside of the plainly expressed
intent of the testator, his use of "my" or his minutely descriptive
words. There seems to be no escape from the position that here and
there a legacy crops out that is not quite definite enough to come
within the strict rule of an "individual legacy," and yet too definite
to be ranked as either demonstrative or general. We shall consider

specific legacies here, therefore, as either "individual" or "unclassified."

**Identification of Subject of Bequest by Ownership.**—Notwithstanding the stress laid upon the word "my" or the expression "in my name" by such authorities as Lord Hardwicke and Lord Eldon, following the spirit of the civil law, as being almost essential to a testator in naming the subject of his bounty so as to impart to it the strictly specific quality, that quality can be imparted otherwise. The use of possessives is one method of indicating the subject matter, but there are others. There may be unmistakable marks about the thing, mention of which will accomplish the purpose; or the thing may be described sufficiently by stating, if with due minuteness, whence it came into the testator's ownership or just where it is to be found.

To take up these indicia in turn, and beginning with that one referring to ownership, we will cite, first, cases where the thing owned is of a miscellaneous nature, and afterward cases where it is a bond or a share or shares of stock or something of that kind.

A bequest of "all my books, historical and geographical, of Greece, of Rome," etc., was held to be specific: Mayo v. Bland, 4 Md. Ch. 484. A testatrix devised and bequeathed to her brother certain real estate, her household furniture and all the rest of her real estate. The described land and the household furniture were held to be specific gifts: In re Corby's Estate, 154 Mich. 353, 117 N. W. 906. A bequest of all my household goods, cash on hand or in bank, and life insurance, is specific: Kearns v. Kearns, 77 N. J. Eq. 453, ante, p. 575, 76 Atl. 1042. A bequest was in words, "all the money I die possessed of in several banks and bonds." Investigation brought out money and bonds belonging to the testatrix in incorporated savings banks and a sum of money on deposit also with an individual. It was held that all went as a specific bequest: In re Beckett's Estate, 15 N. Y. St. Rep. 716. A bequest of all money belonging to the testator and uninvested at his death, whether in bank, in his personal custody or in the hands of his agents, is specific: In re Fow's Estate, 12 Pa. Co. Ct. 133. A testator gave by his will all wheat of which he was the owner, stored on land belonging to him, and all grain that might be raised on such land during a year stated. It was held to be a specific legacy: Rock v. Zimmerman, 25 S. D. 237, 126 N. W. 265.

A bequest of a particular bond is specific, of course: Howell v. Hook's Admr., 39 N. C. 188. A bequest of an amount distinctly set forth of certain bonds testator held is specific: Gilmer's Legatees v. Gilmer's Exrs., 42 Ala. 9. So, also, a bequest of "my East Haddam Bank stock": Brainerd v. Cowdery, 16 Conn. 1. A bequest of all the testator's insurance stocks and other personalty was also so held: Connecticut Trust etc. Co. v. Hollister, 74 Conn. 228, 50 Atl. 750. A clause affecting a bequest of money, "the latter to be derived from my other property not mentioned in the foregoing," identifies bonds

bequeathed in the foregoing clause as bonds belonging to the testator, and the bequest of these is specific: Douglass v. Douglass, 13 App. D. C. 21. A bequest to testator's wife was of "the bank stock which I now hold in the bank," and it was held to be specific: Johnson v. Goss, 128 Mass. 433. "The balance of my stock as per my stock-book," employed as words in a will, imports the testator's possession of "ten shares of the stock of the W. & N. R. Co.," bequeathed in a preceding clause, and the bequest of this stock is specific in consequence: Harvard Unitarian Society v. Tufts, 151 Mass. 76, 7 L. R. A. 390, 23 N. E. 1006. A bequest of "all the mill stock and bank stock remaining in my name after the decease of my said wife" is specific: Tomlinson v. Bury, 145 Mass. 346, 1 Am. St. Rep. 464, 14 N. E. 137. So, too, is a bequest of "all notes of hand which are payable to me at the date of this codicil": Ford v. Ford, 23 N. H. 212. Also a bequest of "one-half of all my stock in the following named railroads, to wit," etc., "and one-half of my stock in the W. Bank": Loring v. Woodward, 41 N. H. 391.

A reference by a testator in his will to certain stocks and particular bonds as being possessed by him is a sufficient expression of ownership to render his bequest of such stocks and bonds specific: Norris v. Thompson's Exrs., 16 N. J. Eq. 542. A testator bequeathed the income of bonds, mortgages, etc., up to a stated amount, the executors to select these from property of testator of that sort, there being enough of it to satisfy the bequest over and over again. The bequest was held to be specific: Blundell v. Pope (N. J. Eq.), 21 Atl. 456. So was a bequest of "ten shares of my Essex County National Bank stock: Moore's Exr. v. Moore, 50 N. J. Eq. 554, 25 Atl. 403. A direction by a testator to pay to his wife the interest to be derived from a bond described, and after her death to his son, with the principal to go to the son's children, is specific: Baldwin's Exrs. v. Baldwin, 7 N. J. Eq. 211.

When making his will the testator owned certain securities and they remained his up to his death. The will contained a bequest to his wife of seventeen thousand dollars, "to be paid to her out of securities which I now hold, instead of cash." It was held that the bequest was specific: Allen v. Allen, 76 N. J. Eq. 245, 139 Am. St. Rep. 758, 74 Atl. 274. So, also, was a bequest of "my stock, right, title and interest" in a company named: Kearns v. Kearns, 77 N. J. Eq. 443, 140 Am. St. Rep. 575, 76 Atl. 1042. So, also, a bequest of a named sum "in notes, to be taken out of my notes as soon after my death as it can be done": Perry v. Maxwell, 17 N. C. 488. A testator made bequests of bank stock, and subsequently in the will expressed himself thus: "In case there should be any deficiency in the bank stock which I hold at my death, as compared with the amount bequeathed in my will and testament," etc. The bequests were specific: McGuire v. Evans, 40 N. C. 269. In another case the bequest was of all the shares, standing in the testator's name, of the stock in a

corporation named in the will, to those certain persons as trustees, they to distribute the dividends, as they should come in among the beneficiaries the will pointed out. The bequest was held to be specific: _n re Noon's Estate (Or.), 88 Pac. 673. Decree affirmed on rehearing: In re Noon, 49 Or. 286, 90 Pac. 673.

In another case the bequest was of "one thousand dollars of the United States six per cent stock or loan of the year 1812, standing in my name on the books of the loan office, Pennsylvania, as per certificate No. 269." It was specific: In re Ludlam's Estate, 13 Pa. 188. A woman by will left her daughter expressly all she possessed and then gave her "the bond held by me." The estate consisted of some cash, some furniture and a bond. The bequest of the bond was specific: In re Weller's Estate, 2 Woodw. Dec. (Pa.) 191. "My stock" in a named bank was, it was held in another case, sufficient, with apt words of bequest, to make a specific legacy of all the stock of the bank standing in the name of the testatrix at the time of her death: In re Martin, 25 R. I. 1, 54 Atl. 589. A testator directed by his will that the executors should not sell the stock he had in a named corporation, but should hold it and pay the dividends to persons named in the will. The bequest was specific as to both stock and dividends: McFadden v. Hefley, 28 S. C. 317, 13 Am. St. Rep. 675, 5 S. E. 812.

A testator gave by will "Twenty thousand dollars out of the six per cent stock of the corporation of Washington in my name, if so much should remain out of my personal estate after satisfying all previous bequests." It was a specific bequest: Larned v. Adams, Fed. Cas. No. 8092, 1 Hayw. & H. 384. A will contained a gift of eighty-two shares of stock "whereof," so the phraseology went thereafter, "fifty shares which are now pledged as collateral for a note, shall be released by my executors from said pledge immediately on my death, if they shall not have been released before my death." Here was a strong implication of ownership, but no direct assertion to that effect; nevertheless it was held, and it would seem very properly, that the bequest of the shares was specific: In re Lyle, 41 Misc. Rep. 596, 85 N. Y. Supp. 290.

**Identification of Subject of Bequest by Unmistakable Marks.**—"A legacy is specific when it is the intention of the testator that the legatee shall have the very thing bequeathed": Wallace v. Wallace, 23 N. H. 149. "In order to constitute a bequest of personal estate specific, there must be a segregation of the particular property bequeathed from the mass of the estate, and a specific gift of a specified portion to the legatee": Mayo v. Bland, 4 Md. Ch. 484. It would appear that the two quotations just given express all that is indispensable in the way of pointing out the subject matter of the bequest, and the intention of the testator that the bequest shall be specific. "To constitute a legacy specific, it is necessary that such intention be either expressed by the testator in reference to the thing bequeathed or that it otherwise clearly appear from the will. This is not, how-

ever, a technical, arbitrary rule, to be answered only by the use of particular words and expressions, but is an embodiment of the general principles by which the character of legacies should be determined, each will resting for construction on the language employed· and on established surrounding significant circumstances, if such exist": Morris v. Thompson's Exrs., 16 N. J. Eq. 542.

As we have seen, the old English courts insisted on a rule in this connection that they found necessary to depart from time after time. Even as to specific bequests of stock the clearly expressed "my" is no longer a sine qua non. "The general rule is that if stock be bequeathed and the testator owns the stock described at the time of making the will, the bequest must be considered specific": White v. Winchester, 23 Mass. (6 Pick.) 47; and the court cited as authority Selwood v. Mildmay, 3 Ves. 310. Under a will certain cattle, "except one pair of yearling steers," were given to one son of the testator and to another "one pair of yearling steers," at the time the will was made, the testator having just one pair of yearling steers. The bequest of these steers was specific: Stickney v. Davis, 33 Mass. (16 Pick.) 19. Where a clause of a will, standing all by itself, bequeathed certain shares of stock, the bequest was specific: Waters v. Hatch, 181 Mo. 262, 79 S. W. 916. A bequest of one carriage when, as a fact, the testator had only one, was specific: Everitt v. Lane, 37 N. C. 548.

A devise so framed as to make a gift of a crop growing on the land results in the gift becoming a specific legacy: Stall v. Wilbur, 77 N. Y. 158. A bequest of two certain policies of insurance is specific: Platt v. Moore, 1 Dam. Sur. (N. Y.) 191. A bequest of life insurance, the amount and the company being named in that connection, is specific: In re Gan's Will, 60 Misc. Rep. 282, 112 N. Y. Supp. 259; decree modified, 114 N. Y. Supp. 975. A devise of land with directions that it be sold and the result in money divided between named persons is a specific bequest: In re Brown's Estate, 1 Am. Law Reg. 126 (Pa.).

Although the thing bequeathed be not owned by the testator when making his will, if susceptible of being pointed out and distinguished from the rest of the estate at the time of testator's death,· it is enough. The bequest is specific: Appeal of Fidelity Ins. etc. Co., 108 Pa. 492, 1 Atl. 233. A will provided that the homestead of testatrix be sold and the price invested.for her son's benefit; after the son's death the principal to ,go to others named. It was a specific bequest: In re Martin, 25 R. I. 1, 54 Atl. 589. If the things falling within the terms of a legacy when enumerated (or if they had been enumerated by the testator) are in their nature specific, if capable of individuality, or if it be an assemblage of things or something capable of being separated by sensible distinctions as the property in a particular estate, then the legacy is specific: Bailey v. Wagner, 2 Strob. Eq. (S. C.) 1.

**Identification of Subject of Bequest by Stated Derivation.**—That is to say, by the testator's reference to the source from whence the property bequeathed became his to give. And first let us take the case where the reference was to a derivation from the estate of another. In Young v. McKinnie, 5 Fla. 542, the words in the will were: "I dire'ct that all the property, real and personal, that I obtained from the estate of B. K., deceased, be returned to R. K., minor heir of B. K., deceased, or such portion thereof as I now have in my possession." The gift was held to be specific. So, in the same case, a restoration to the minor heir of another deceased person from whom the testator declared he had received the property given was held to be a specific gift. In Iowa it was held that a bequest of a sum of money described by the testatrix as being that received by her from an estate named was specific: Smith v. McKitterick, 51 Iowa, 548, 2 N. W. 390. In Maryland there was a devise of "my Bland Air plantation, with all the slaves, and their increase, which I derived from my uncle T., and all the personal property thereon not slaves, and used with the same at the time of my death." This was a specific bequest of the slaves and other personal property: Mayo v. Bland, 4 Md. Ch. 484. In another Maryland case the testator had bequeathed one thousand dollars to a brother and sister each "out of the portion or share of my father's estate that may come to me." These legacies also were held to be specific: Gelbach v. Shively, 67 Md. 498, 10 Atl. 247. So, too, in New York a legacy of "the five hundred dollars," stated in the will as having been bequeathed to the testatrix by her brother: See In re Getman, 128 App. Div. 767, 113 N. Y. Supp. 67.

A legacy held in South Carolina to be specific was expressed thus: "I give to my wife the whole of the property she brought me": Warren v. Wigfall, 3 Desaus. 47. In a case in Virginia where the testatrix had bequeathed two thousand dollars to each of two persons named "of the ten thousand and fifty-two dollars which I received from my uncle F. C.'s estate, it appeared that her husband had invested the ten thousand and fifty-two dollars in Virginia bonds, and these were transferred to her by his executor. It was held that the two bequests of two thousand dollars each were not specific, but money, legacies: Skipwith v. Cabell's Exr., 19 Gratt. 758.

Next, as to reference by the testator to derivation by payments looked to from persons under duty to make such. A bequest of a note and the mortgage securing it, to hold on trusts stated, reduce the obligation to cash and invest the latter as may seem best to the trustee, is a specific bequest: Farnum v. Bascom, 122 Mass. 282. A bequest to a mortgage debtor of the testator of the principal of the debt and a direction in the will to the executor to assign and transfer the mortgage to him amount to a specific bequest: Wheeler v. Wood, 104 Mich. 414, 62 N. W. 577. The legatee of "all the money due on a bond against P. and I." has a specific legacy: Stout v. Hart,

7 N. J. L. 414. So has the legatee of "the money now owing to me from A": Hayes v. Hayes, 45 N. J. Eq. 461, 17 Atl. 634. A gift of the proceeds of a bond and mortgage described is specific: Gardner v. Printup, 2 Barb. 83. A will contained a provision that "a certain bond and mortgage of seven thousand dollars, the present amount of principal due, and which I hold against J.," be held by the executors in trust to pay the interest to a named person for life, and afterward reduce the obligations to cash and divide and distribute. It was a specific bequest: Abernethy v. Catlin, 2 Dem. Sur. (N. Y.) 341.

A will provided for the taking of tolls upon a road in trust to pay a sum therefrom monthly to a named person. It was a specific, and not a demonstrative, legacy: Morris v. Harris, 19 Ohio St. 15. A testator bequeathed a debt stated to be owing him. It was a specific bequest: In re Souder's Estate, 15 Pa. Co. Ct. 285, 3 Pa. Dist. 495. So where a testator bequeathed promissory notes: In re Martin, 25 R. I. 1, 54 Atl. 589. And where one bequeathed "the amount of the following notes," describing those meant: Tipton v. Tipton, 1 Cold. (41 Tenn.) 252. A will recited, among other things, "I give and bequeath to my son . . . the sum of one thousand dollars to be paid as follows, said sum to be credited on a promissory note I now hold against him for the sum of thirteen hundred dollars." At the making of the will and the testator's death, one thousand dollars was the balance due on the note. This was a specific legacy to which the legatee's right of property became fixed by the testator's death, so that from then on the maker of the note was not accountable for interest to either the estate or its assignee: Martin v. Badger (Wash.), 114 Pac. 505.

Next, as to reference by the testator to derivation by anticipated proceeds of sale, etc.: A testator made sundry general bequests of money, and then, referring to his stock of goods, directed his executors to sell these and his real estate and divide the proceeds between his brother and two sisters equally. By a further clause in the will he disposed of the residue of the estate. The bequest to the brother and sisters was held to be specific: Kaiser v. Bandenburg, 16 App. D. C. 310. A will provided for the sale of the testator's household furniture and that the balance of the proceeds, after payment of the funeral expenses, should go to a named church. In ensuing clauses the will provided for certain legacies, after which it directed that the residue, if any, should be divided among "the said legatees in the same proportion that the several legacies bear to each other," while, on the other hand, they, in case the "sale of my property should prove insufficient for the payment of all said legacies in full," should bear, in respect of such legacies, the deficit in like proportion. The bequest of the balance of the proceeds of the sale of the furniture was held to be specific: In re Brett, 57 Hun, 400, 10 N. Y. Supp. 871. Another will provided for the sale of the testator's real estate and the application of the proceeds to the payment of debts, funeral ex-

penses, inheritance and other taxes, and all the costs, etc., of admin-
istration, so that the legacies under the will should suffer no
deductions; it then provided for the payment of the balance of the
proceeds to a niece of the testator. It was held that the niece took
a specific bequest: In re Wilson's Estate, 15 Phila. 528. Certain de-
scribed personalty was set apart by a will for raising a fund for the
legacies, and it was directed in the will that "the surplus, after pay-
ing the legacies, if there should be any," was to be divided among
named grandchildren of the testator. This surplus was a specific
bequest: Bailey v. Wagner, 2 Strob. Eq. (S. C.) 1.

Next, as to reference by the testator to derivation in respect of
negotiations, or suits in process at the time of the making of the
will: A will provided that if the testator prevailed in a certain liti-
gated claim, his wife should have one-half net of the amount recov-
ered, and that ten thousand dollars of the other half, provided the
half should amount to twenty-five thousand dollars, should be given
to Q., to complete the cathedral; but if the half should be less than
twenty-five thousand dollars, only two-fifths of it should so go for
the cathedral, while of the rest, two thousand dollars should be given
to each of five named persons and the remainder to the testator's
daughter. A further provision was that if the fund failed in amount
sufficient to pay "said special legacies" in full, the legatees should
take pro rata. The bequests were held to be specific rather than
demonstrative or general: Maybury v. Grady, 67 Ala. 147. The be-
quest of money to be received under a decree in a suit mentioned in
that connection is specific: Chase v. Lockerman, 11 Gill & J. 185, 35
Am. Dec. 277. A bequest of that portion of the purchase money of
an estate named as shall be on hand at the testator's death is spe-
cific: Starbuck v. Starbuck, 93 N. C. 183. A will provided: "I give
and bequeath to my wife Mary all the amount of moneys and in-
terest that may be recovered of and from Dr. Kirker for the purchase
of the Penrose estate, to her and her assigns." The bequest was spe-
cific: Gilbreath v. Alban, 10 Ohio St. 64. A pecuniary bequest
charged, wholly or in part, upon another bequest or devise, so that
an intent is apparent thus to burden such bequest or devise with the
payment, is specific: Walls v. Stewart, 16 Pa. 275.

Identification of Subject of Bequest by Its Location.—The reference
here is to the testator's mentioning in connection with his disposing
of the particular thing, and as a means of identifying it, the place
where it is to be found. And first, with reference to things in cus-
tody of banks, etc. A bequest of whatsoever sum the testator might,
at the time of his death, have on deposit in a bank is specific: Barber
v. Davidson, 73 Ill. App. 441. And when, after so disposing in his
will and calling attention to the particular banks where the deposit
was, the testatrix drew out money and deposited it in another bank,
where it remained until her death, the bequest still was specific:
Prendergast v. Walsh, 58 N. J. Eq. 149, 42 Atl. 1049. Testatrix be-

queathed "all the money I die possessed of in several banks and bonds." It was specific: In re Beckett's Estate, 15 N. Y. St. Rep. 716. So, too, a bequest of shares of stock by reference to their being pledged as collateral, the executor being directed to have them re-leased at once after testator's death: In re Lyle, 41 Misc. Rep. 595, 85 N. Y. Supp. 290. And see Appeal of Smith, 103 Pa. 559, where money in a bank was bequeathed to two sons. And In re Fow's Estate, 12 Pa. Co. Ct. 133, where the bequest was of all money belonging to the testator, whether in bank, in his own custody or in the hands of his agents. And Manlove v. Gant, 2 Tenn. Ch. App. 410, where the bequest was, among other things, of money in bank left after paying expenses and the doctor's bill.

Next, the contents of a store, as in the case of Kelly v. Richardson, 100 Ala. 584, 13 South. 785. There the testator had bequeathed to one person all his property excepting a stock of merchandise, books, accounts, notes, store fixtures and everything belonging to a certain store named which he bequeathed to another; the latter bequest was held to be specific.

Next, as to property at home or so described virtually: In Getman v. McMahon, 30 Hun, 531, the bequest was of "the use and control of all my personal property whatsoever on the farm and in the house at the time of my decease, and for her to have and use and enjoy the same," etc. It was held to be specific. In Re Delaney's Will, 133 App. Div. 409, 117 N. Y. Supp. 838, the bequest was of all the household furniture and personal property of whatever kind in the residence of testatrix. It was held to be specific, but that as to it the will should be regarded as speaking as of the time it was made rather than as of the death of the maker. In McFadden v. Hefley, 28 S. C. 317, 13 Am. St. Rep. 675, 5 S. E. 812, the bequest was of all the horses, mules, cows, hogs, wagons, farming implements, and household and kitchen furniture on the plantation which the testator occupied. It was held to be specific.

Then as to property described in the will as being in the hands of the testator's agents as in the case of Fow's Estate, 12 Pa. Co. Ct. 133, where the bequest was decided to be a specific one.

Unclassified Specific Bequests.—It was said by Van Dyke, J., in Morris v. Thomson's Exrs., 15 N. J. Eq. 493: "We have but little difficulty in understanding what constitutes a specific legacy and what a general one, but from the peculiar language so often made use of in wills, the courts have had great difficulty in determining whether it meant the one thing or the other; and while the judicial decisions on the questions have been very numerous, the one way and the other, but very few settled rules can be gathered from them. It seems to be conceded that if a testator bequeaths to a person a certain number of cows, or sheep, or shares of stock, it is a general legacy, but if he add the word 'my' cows, 'my' sheep or 'my' shares of stock, it is a specific legacy, although in both cases he may be, at the time

of making the will, and thence to the time of his death, the owner of the number of cows and sheep and shares of stock mentioned in the will. This seems to be at first sight a rather remarkable distinction, but such seems to be the rule adopted by the courts and by the aid of which each tribunal has to grope its way through the unintelligible language so often found in wills. Hence another rule, admitted to be universal, is always to be resorted to in solving these difficult questions, and that is, What was the real intention of the testator? This, if it can be ascertained, is always to govern."

In that case the testator had, by the will, disposed of all his personal property except the stocks and bonds, the subjects of the bequests which were made in later parts of the will, and there being now no personal estate, other than his stocks and bonds, on which the residuary bequests could operate, the court held that his describing the residue as "my personal estate" was equivalent to saying "my" stocks or "my" bonds, and made the bequests specific and not general: Morris v. Thomson's Exrs., 15 N. J. Eq. 493. So, too, in a Texas case. The testator started out in his will by declaring his intention that his wife and daughter should share his estate equally, then proceeded to make dispositions in detail looking to that end. The result of these dispositions, however, owing to the actual state of the property, was to bring the daughter into a lawsuit and subject her probably to a loss of money, and work other such confusion. It was a complicated case, and for the daughter's relief the court fell back upon the opening general expressed intention in the will and decided that what the wife and daughter took were not specific gifts, but demonstrative: Lake v. Copeland, 82 Tex. 464, 17 S. W. 786.

A testator gave to his wife "twenty negroes of the average value of all the slaves I may possess," and to his children, "all the rest and residue of my negro slaves." They were specific bequests: Myers' Exrs. v. Myers, 33 Ala. 85. Of the shares of twelve children, to whom was to go in equal shares, under the will, the price of the homestead directed to be sold at the end of the wife's life estate in it created by the will, one child bought nine. He occupied the property and at his death left by his will "one-third of the real estate of the homestead" to his wife and two-thirds to his son. It was held that the wife and son took, not devises of the land, but specific bequests: Heslet v. Heslet, 8 Ill. App. 22. In the case of a bequest to a daughter of shares, in various amounts, of several sorts of stocks named "and also five thousand dollars of the Wilmington, Columbia and Augusta Railroad bonds," when, after testator's death, no such securities were found among the assets except the bonds named, worth thirty cents on the dollar, the daughter had a specific legacy of the bonds, and was not entitled to five thousand dollars in money: Kunkel v. Macgill, 56 Md. 120.

Gray, C. J., says, in Metcalf v. Framingham Parish, 128 Mass. 370: "If a reading of the whole will produces a conviction that the tes-

tator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication and so mold the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." Accordingly, the testator having made several bequests of shares of stock named, when, at the date of the will and also of the death he held of such stock shares largely in excess of those bequeathed, it was held that the bequests were specific. There were legacies of money to the same persons, and the court regarded that as indicating intent as to the other legacies so held specific, on the authority of Lord Cairns, in Kermode v. Macdonald, L. R. 3 Ch. 584; Metcalf v. Framingham Parish, 128 Mass. 370. Words in a will were these: "I give to my son negroes to the amount of $3,350, negro men at $800 and the women at $600, and smaller negroes in the same proportion." It was held that this was a specific bequest of negroes, and not a money bequest with a designation of the negroes as the fund from which it was to be taken: Malone v. Mooring, 40 Miss. 247.

A testator gave his wife "five hundred dollars in personal property such as she may select," and it was held to be a specific bequest. The court said: "By our law the executor, except when he is the residuary legatee, is bound to return an inventory of the personal property, the value of which is estimated by appraisers. The personal property does not, as in England, go to the executor, but, if undisposed of by the will, descends to the heir at law. As the personal property is all inventoried and belongs to the estate after the death of the testator, a reference to it in connection with a legacy would seem to make the legacy more specific than it might be considered by the use of the same words in England": Wallace v. Wallace, 23 N. H. 149. Where a testator made bequests as of sums of money, but "in bonds" of a named class, and the amounts and names tallied exactly with bonds he owned, the bequests were specific, the court saying: "The question is, What did the language of the will mean to the testator?" Jewell v. Appolonio, 75 N. H. 317, 74 Atl. 250. A bequest of a mortgage, "subject to the payment of the income from it to testator's wife during her life," was held to be specific: In re Robinson, 37 Misc. Rep. 336, 75 N. Y. Supp. 490. The case of Perry v. Maxwell, 17 N. C. 488, was one where the character of the bequest was described by—as it were—reference. The bequest was contained in a clause of the will preceding a clause, to wit, "all the notes that will be remaining after paying of the legacies hereinbefore given." It was held to be specific. A bequest to the testator's wife of a named number of horses, oxen, etc., with the designation "her choice," after each, is rendered specific by such designation: Everitt v. Lane, 37 N. C. 548. A lessee exercised a standing option to purchase the demised premises, but before the expiration of the option the lessor had died leaving a will whereby his wife had a life estate in those

premises, with remainder to her children. The wife and children took the purchase money as a specific bequest: Buckwalter v. Klein, 5 Ohio Dec. 55; Where a clause in a will provided expressly for the payment of all debts, funeral expenses, inheritance taxes, and all expenses of administration, to the end that legacies made in subsequent clauses should suffer no deductions, and then directed the rest of his estate to be given to a named person, it is a specific legacy: In re Wilson's Estate, 15 Phila. 528. A man bequeathed eighty shares of a named stock to his stepson, after his wife's life estate in it, bequeathed to her, and fifteen hundred dollars; he gave his daughter some insurance stock and, saving what he had bequeathed to the stepson, all the stock in which, under the will, the wife was to have for life. There were no funds to satisfy the money legacies and the widow elected to take against the will. Both bequests were specific and possession was accelerated by the election: In re Klenke's Estate, 210 Pa. 575, 60 Atl. 167.

A woman provided by will that her son be allowed to live on a farm named instead of receiving the income of it, the farm to be sold after his death and the proceeds to go to other certain beneficiaries. The son took a specific legacy: In re Martin, 25 R. I. 1, 54 Atl. 589. In Manlove v. Gant, 2 Tenn. Ch. App. 410, the gifts were of rents yet to accrue, the proceeds of the sale of a storehouse, less the mortgage to be paid on it, and what might be left of money in the bank after paying funeral expenses, etc., and doctor's bills. The legacies were specific.

In closing this branch of the subject it is not out of place, perhaps, to quote at some little length from a Massachusetts case where the characteristics of a specific bequest are put forth very clearly. The case was one of a bequest of a certain mortgage deed and the note mentioned in the mortgage to a person in trust to hold the same on certain trusts, collect when payable the debt secured by the instruments, and sell the same whenever he should deem best, and invest the proceeds. Devons, J., said, among other things: "When the intent is to bequeath a certain sum and the circumstances that it is then out on mortgage or any other security is incidental merely, and does not constitute an ingredient in the gift, the legacy is general: Le Grice v. Finch, 3 Mer. 50. But if the gift be of the sum due upon a mortgage of particular premises, or upon a certain note described, the legacy is specific: Sidebotham v. Watson, 11 Hare, 170; Gillaume v. Adderley, 15 Ves. 384; Chaworth v. Beech, 4 Ves. 555; Innes v. Johnson, 4 Ves. 568; Giddings v. Seward, 16 N. Y. 365. So if the gift is of the proceeds of a certain mortgage or all the money due on the bond of A. B. or all the money standing to the testator's credit in a particular bank, such legacy is specific: Giddings v. Seward, 16 N. Y. 365; Stout v. Hart, 2 Halst. 414; Towle v. Swasey, 106 Mass. 100. When the bequest is not of the sum of money due on a particular security, but of a particular security described, the gift is not less

specific, for nothing will fulfill the terms of the bequest but the thing itself. The legacy we are now considering was of the mortgage deed, note and debt. The fact that the testatrix mentions the amount due from the promisor is for its convenient identification only. This does not constitute any ingredient in the gift. It would belong to the legatee if it should have been reduced by payment, but there would not be any claim, on account of such reduction, against the general estate. As long as it can be identified, the legatee may have it; but he receives it in the condition in which it is when the gift takes effect by the death of the testatrix. The security was the essential thing. If the money due thereon had been collected and invested in a new form the legacy would have been adeemed, as that which was given would have ceased to exist": Farnum v. Bascom, 122 Mass. 282.

When a bequest is held to be specific, rather than demonstrative or general, the fact may be of advantage to the legatee or otherwise according to circumstances.

"The rules as to specific legacies are known; in several things they are preferred to pecuniary legacies, in others not. They are entitled to this advantage, that if there is not a penny for the pecuniary, a specific legatee shall take the whole, if that exists": Drinkwater v. Falconer, 2 Ves. Sr. 623. In the case of Masters v. Masters, 1 P. Wms. 421, it was admitted that both the real and personal estate of the testatrix were deficient in value to pay the legacies and annuities given by the will. "It was decreed by the master of the rolls that, the personal estate not being sufficient to pay the legacies and the real estate being liable to the legacies by the will, the estate should be so marshaled that as far as possible the whole will might take effect and all the legacies be paid. And therefore that the legatees should be paid out of the real estate, and if that should be deficient they must be paid out of the personal estate; and, there being admitted to be a deficiency that the land should be forthwith sold to prevent a greater deficiency, but that the specific legacies must be all paid, and not abate in proportion."

And in Blaney v. Blaney, 55 Mass. (1 Cush.) 107, it was said: "By the established rule of marshaling assets, specific devises and legacies are not to be taken for payment of the testator's debts until the general devises and legacies are exhausted." And in Cooch's Exr. v. Cooch's Admr., 5 Houst. 540, 1 Am. St. Rep. 161. "Every testator is presumed to know the law with respect to the liability of his estate for his debts, and consequently to make disposition of it in accordance with such knowledge. Therefore it is that when a testator even uses such sweeping and apparently conclusive words in disposing of his personalty as 'all my personal estate,' the law still holds that he only meant such portion of it as should be left after taking from it all that it was liable to, either as matter of legal responsibility for debts, funeral expenses and charges of administration, or on account

of some further deduction which the provisions of his will require—for example, a specific legacy."

In Drinkwater v. Falconer, 2 Ves. Sr. 623, the court, after saying as above quoted, "If there is not a penny for the pecuniary, a specific legatee shall take the whole," adds: "But, on the other hand, if it [the thing bequeathed] does not appear on the death of the testator it is gone, and the general assets cannot be resorted to." And in Lord Eldon's observation in Howe v. Lord Dartmouth, 7 Ves. 137: "The question must be, Did he mean to dispose of what he had at the date of the will, or of that which he should have at his death? If he meant the former, then every part of that identical personal estate which is disposed of between the date of the will and the death is a legacy adeemed." An illustration is found in the case of a specific legacy of money due on a note. After making her will the testatrix received payment of the money and deposited the latter with a banker with whom she had no other funds, and it so remained, all but ten pounds which she drew out, until her death. It was held an ademption. Sir William Grant said: "The principle of ademption by receiving the thing given is certainly that the thing given no longer exists; for if after the receipt of it, it could be demanded, that would be counting it into a pecuniary, instead of a specific, legacy. It is said this is pecuniary, as it is a bequest of the money to be received. But that is the case of every bequest of a debt. If anything could be made of the circumstance of placing the money with these bankers, it is counter-balanced by the other circumstance that she drew out a part of that money. That is treating it as her own. If she meant to appropriate it and consider it as a legacy still standing and binding upon her estate, she ought not to have touched it. This is not so much to be considered as a partial ademption as an evidence of her having deposited there to be at her own command": Fryer v. Morris, 9 Ves. 360.

A grandchild was to have a certain sum of money and two hundred shares of a named stock, and the testator's wife was given all the rest of the property. When the will was made the testator owned shares of stock in various companies and over two hundred shares of this named stock, but at his death he held less than two hundred shares of this stock. The bequest was not general, but specific, and the legatee was entitled to only the number of shares the testator had at his death: New Albany Trust Co. v. Powell, 29 Ind. App. 494, 64 N. E. 640.

A testator made a will before the settlement of his father's estate and bequeathed to certain persons sums to which he would be entitled under his father's will. He left the rest of his estate to other persons. The father's estate, upon settlement, did not produce, as the son's part, the full amount of the sums bequeathed, as above, and the legatees, applying to have the deficit made good from the rest of the son's estate, were denied, the ground being that the legacies

were specific and partially adeemed: Gelbach v. Shively, 67 Md. 498, 10 Atl. 247.

A testatrix provided that a sum of hers held by her brother be devoted to the payment of the funeral expenses and other bills and gave a life estate in what might be left of it to a person named. She further provided that on the death of that person six hundred dollars of the sum should go to a certain other person. The sum was, after the making of the will, received by testatrix from her brother and became mixed with her other funds. The bequest was specific and was adeemed by a failure of the fund: In re Stilpen, 100 Me. 146, 60 Atl. 888, 4 Ann. Cas. 158. A will gave four hundred dollars to the testator's nephew, owner of land on which the testator held a mortgage for that amount, and the direction to the executor was that the gift was to be effected by his assigning and transferring the mortgage to the mortgagor; but the mortgagor paid the mortgage to the mortgagee and after the latter's death it was held that the nephew was not entitled to four hundred dollars in money: Wheeler v. Wood, 104 Mich. 414, 62 N. W. 577. Testatrix when making her will had twenty shares of the stock of a certain bank and of that stock gave by the will ten shares to each of two persons. The bequest was held to be of the particular shares owned by her, and not twenty shares generally, and as she had disposed of ten shares after making the will, the legatees took only five shares each. It was a partial ademption: Drake v. True, 72 N. H. 322, 56 Atl. 749.

A will gave to the executors "a certain bond and mortgage for seven thousand dollars, the present amount of principal due, and which I hold against J." The executors were to hold in trust, to pay to A. the interest during his life and afterward to reduce the obligations into cash, and divide and distribute according to further testamentary directions. However, J. paid up during the testator's lifetime and the money remained on deposit with a banker. The bequest was specific, and adeemed: Abernethy v. Catlin, 2 Dem. Sur. (N. Y.) 341.

There was a bequest to a sister of all the testator's personal estate and a devise to her for life of the farm he occupied, with a provision that when she died the farm was to be sold and the product of the sale distributed among their nephews. The farm was sold before the testator's death, however, and a mortgage taken for the price, which mortgage was, when the testator died, only partly paid up. The bequest to the nephews was decided to be specific and adeemed: Sharp v. McPherson, 10 Ohio C. C. 181, 3 Ohio Dec. 468.

A man devised a tract of land to his son subject to a charge of six hundred dollars for the benefit of the children of another son. Half of this sum was to be paid in one year after the testator's death and the other half in two. But after making his will the testator sold the land to a third son, the consideration being partly in cash and partly in deferred payments which did not mature until after the death of the testator. As the charge under the devise was the

only source contemplated of payment of the amount charged, this amount was held to be a specific bequest which had been, of course, adeemed: Walls v. Stewart, 16 Pa. 275. A bequest of promissory notes is specific and subject to be reduced by payments made between the execution of the will and the death of the testator: In re Martin, 25 R. I. 1, 54 Atl. 589.

The ademption of legacies is discussed at length in the note to Miller v. Malone, 95 Am. St. Rep. 342.

Lord Hardwicke said in Ellis v. Walker, Amb. 309: "The court leans against considering legacies as specific, because of the consequences." To the same effect, see Chaworth v. Beach, 4 Ves. 555; Innes v. Johnson, 4 Ves. 568; Kirby v. Potter, 4 Ves. 748; Raymond v. Broadbelt, 5 Ves. 199; Barton v. Cooke, 5 Ves. 461; Sibley v. Perry, 7 Ves. 502; Webster v. Hale, 8 Ves. 410; Deane v. Test, 9 Ves. 146; Wilton v. Brownsmith, 9 Ves. 180; Fryer v. Morris, 9 Ves. 360; Smith v. Pybus, 9 Ves. 566; Lambert v. Lambert, 11 Ves. 607; Guillaume v. Adderley, 15 Ves. 384; Apreece v. Apreece, 1 Vern. & B. 364. Among American decisions to the same effect are Briggs v. Hosford, 22 Pick. (39 Mass.) 288; Dexter v. Phillips, 121 Mass. 178, 23 Am. Rep. 261; Appeal of Balliet, 14 Pa. 451.

What these consequences are we have seen, but the matter is given emphasis in the following extract from a decision in a Maryland case: "In determining this as well as all other questions involving the construction of a will, it is admitted that the intention of the testator must prevail, but inasmuch as specific legatees are not liable to contribution in case of a deficiency of assets, and inasmuch as the legacy fails entirely if the testator parts with the property or thing specifically bequeathed, courts lean against construing a legacy to be specific, and have gone so far as to say that in no case ought a will to be so construed unless the language imperatively requires it. And accordingly we find Lord Eldon saying that, according to well-settled rules of construction, he was obliged to decide a legacy to be general although according to his private opinion the testator meant it to be specific": Dryden v. Owings, 49 Md. 356. Among other American cases bearing this sentiment are Morton v. Murrell, 68 Ga. 141; Requet v. Eldridge, 118 Ind. 147, 20 N. E. 733; Malone v. Mooring, 40 Miss. 247; Wallace v. Wallace, 23 N. H. 149; Perry v. Maxwell, 17 N. C. 488; Balliet's Appeal, 14 Pa. 451.

"A demonstrative legacy partakes of the nature of both a general and specific legacy. It is a gift of money or other property charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund or to evince an intent to relieve the general estate from liability in case the fund fails. A specific bequest is liable to ademption, but such is not true of a general or a demonstrative legacy": Nusly v. Curtiss, 36 Colo. 464, 118 Am. St. Rep. 113, 10 Ann. Cas. 1134, 7 L. R. A. (N. S.) 592, 85 Pac. 846. "The distinction between a specific and a demonstrative legacy involves not merely a

technical question depending for its solution solely upon the precise language of the bequest, but a substantial inquiry respecting the intention of the testator as shown by the terms of the particular legacy, examined in connection with all the other provisions of the will. A specific legacy is a bequest of a specific article or particular fund which can be distinguished from all the rest of the testator's estate of the same kind, while a general legacy is payable out of the general assets of the estate": In re Stilpen, 100 Me. 146, 4 Ann. Cas. 158, 60 Atl. 888. In the same opinion it is said that a demonstrative legacy partakes of the nature of a specific one, to be sure, by designating the fund out of which it is to come, but that there is a vital distinction in respect of the result in case of the failure of that fund. In such circumstances a specific legacy is adeemed or lost by the extinguishment of the specific thing or failure of the particular fund, while a demonstrative legacy is still alive after such a failure, being payable then out of the general assets. To the same effect see Morriss v. Garland's Admr., 78 Va. 215.

This, in fact, is the bequest of quantity that Lord Hardwicke had reference to in the quotation above from his decision in Purse v. Snaplin, 1 Atk. 414. The quality of the gift is intermediate between that of a specific and that of a general bequest: Harrison v. Denny, 113 Md. 509, 77 Atl. 837. As was said in Balliet's Appeal, 14 Pa. 45: "The distinction between a specific and a pecuniary legacy and a specific and a demonstrative legacy is sometimes very nice."

A testator made a gift of a named sum to each of two nieces, stating it to be "part of the proceeds of" certain property mentioned— ground rents, insurance, etc. These were demonstrative bequests, and if such proceeds proved insufficient to satisfy them, the legatees had resort to the other property of the estate: Harrison v. Denny, 113 Md. 509, 77 Atl. 837. A testator provided that his widow, if outliving his mother, should take the income of property he named (which income his father by will had given to the mother for life, testator being given by the same will testamentary disposal of the principal) until his, testator's eldest child, should reach full age, at which time, if the widow still lived, his executors should "set apart out of the said property" a fund of one hundred thousand dollars for the child's benefit. Similar provision was made in respect of each of his children him surviving, the widow to continue, during life, to enjoy what was left after each setting apart. Three children were living when the testator died, and all reached maturity, testator's widow still surviving but his mother being dead. The property subjected to these dispositions amounted to only one hundred and twenty-five thousand dollars, and the testator had had the disposal, under his father's will, of two hundred and sixty-five thousand more, but had acquired no independent means. The children were held to have demonstrative bequests and could look to the general assets for having them satisfied: Bradford v. Brinley, 145 Mass. 81, 13 N. E. 1.

A bequest was, under the will, payable out of personal property on hand after the death of the wife of the testator and before the personal property should be divided. It was demonstrative rather than specific: Hibler v. Hibler, 104 Mich. 274, 62 N. W. 361. A will provided for a fund from which a certain income was to be derived for the testator's widow, this income to be paid her yearly, securities enough to produce which should be selected. This was a "general" or "demonstrative" bequest, the court said, and the full amount must be made up out of the assets generally: Merriam v. Merriam, 80 Minn. 254, 83 N. W. 162. The selection by an executor, empowered by a will to select securities from which named income was to be derived for a beneficiary, is not so final as that the income fails with the securities selected. On such failure of the selected securities resort would be to the corpus of the estate, this being a demonstrative bequest: Eggleston v. Merriam, 83 Minn. 98, 85 N. W. 937, 86 N. W. 444.

A gift in a will read: "To the three daughters of T. the sum of four thousand dollars each, to be secured to them in the best manner possible, and the interest accruing thereon to be paid to T. for their support and education; moreover, till this donation be secured, to pay T. the sum of three hundred dollars per annum; this donation to be paid to each when of age or married." Here was not a demonstrative but a general pecuniary legacy, a charge primarily upon the whole estate: Bodley v. McKinney, 9 Smedes & M. (17 Miss.) 339. A testator's wife was to have "the sum of eight thousand dollars invested in stocks, the interest to be paid to her during her life." The bequest was demonstrative: Johnson v. Conover, 54 N. J. Eq. 333, 35 Atl. 291.

By a will a trustee (who was also an executor and the residuary legatee) was given certain sums "in bonds," of corporations named, to be reckoned at their face. At the making of the will the testator owned of·each kind of the bonds enough to cover all the bequests. A later clause of the will provided that if the estate should fail to show the whole number of the bonds, the trustee need not furnish them, but take just what there were. If the bequest had ever a demonstrative aspect, that last clause took it away; it was specific: Blair v. Scribner, 65 N. J. Eq. 498, 57 Atl. 318. And see same case in 67 N. J. Eq. 583, 60 Atl. 211. There was this language in a will: "And my said wife having now in her possession the sum of eight hundred and fifty dollars in money, I direct and request my said executors to pay her the sum of one hundred and fifty dollars more, so as to make her the sum of one thousand dollars. My meaning and intention is to give her the sum of one thousand dollars." The court said the bequest of the one thousand dollars was general rather than specific, but that that of the eight hundred and fifty was demonstrative, or specific in so far as to require it to be paid out of the fund named unless such had failed: Enders v. Enders, 2 Barb. 362.

The "sum of twelve hundred dollars and interest on the same, contained in a bond and mortgage," was bequeathed under a will which,

by a further clause, in effect made the legatee such only for life, with remainder over. The bequest was held to be demonstrative: Giddings v. Seward, 16 N. Y. 365. The widow was to have durante viduitate, provided at the testator's death issue of the marriage should be living, an annuity of eight thousand dollars to be paid "out of the income of my estate." The will then provided that in default of such living issue she should have an annuity of seven thousand dollars, the sole provision made for her, and left "the residue of the income" to go to a brother and sisters of the testator for their lives with remainder to their children on the death or marriage of the widow. The annuity of seven thousand dollars was held to be a demonstrative bequest, to be paid out of the principal of the estate if the income from the latter was deficient; and this, although when making his will the testator thought, according to the evidence, that his estate would produce an ample income after payment of the larger annuity: Pierrepont v. Edwards, 25 N. W. 128.

A testatrix made certain general and specific bequests and provided.then that F. be paid fifty dollars a month, during his life, out of the rents and income of the estate. She instructed, next, her executors to keep down the interest on her realty, pay assessments on it and maintain it in repair. The personal property was not adequate fully to satisfy the general legacies. F.'s bequest was held to be demonstrative: Florence v. Sands, 4 Redf. Sur. (N. Y.) 206.

A devisee was directed, as to a named sum on deposit in his name, to pay it to another person. Here, it was held, was a specific rather than a demonstrative bequest, and if the testator after making the will used the deposit, it was not a thing to be made good to the legatee after the testator's death: Crawford v. McCarthy, 159 N. Y. 514, 54 N. E. 277. When the terms of a testamentary gift of money are plain and conclusive, showing an intention that the legatee shall certainly receive the amount, the gift is demonstrative: Watrous v. Smith, 7 Hun, 544; M. E. Church v. Hebard, 51 N. Y. Supp. 546.

Testatrix gave a house and lot to her infant children and directed that of the money in bank as much as necessary be used to pay off the mortgage on the house, all as soon as possible after her death. This was a demonstrative bequest, and if the money in bank did not suffice to carry out the direction and there was no personalty left in the estate after payment of administration expenses, resort must be had to the balance: In re Bedford, 67 Misc. Rep. 38, 124 N. Y. Supp. 619. A will contained this provision: "I give unto my youngest child, W. H. W., the sum of three thousand dollars, to be due and paid when he arrives to twenty-one years of age, out of the proceeds of the sale of my lands." It was a demonstrative bequest: Croom v. Whitfield, 45 N. C. 143.

An estate was by will divided into shares, and of these two, it was directed, were to be in negro property, which should be designated by the executors. These were demonstrative bequests: Johnson v.

Osborne, 62 N. C. 59. A testator made certain bequests of four thousand dollars each to be paid in any of his stocks, bonds, notes or other evidences of debt at their market value. If such were inadequate for the purpose, the deficit was to be made good in money. The bequests were demonstrative: Trustees of Baptist Female University v. Borden, 132 N. C. 476, 44 S. E. 47, 1007. A bequest of a lump sum payable in shares of enumerated stocks at figures stated is demonstrative: Rose v. Warner, 17 Ohio C. C. 342, 9 Ohio Dec. 536. A legacy given, reference being made in the will to a stated fund so as merely to point out a convenient mode of paying it, is demonstrative: Walls v. Stewart, 16 Pa. 275.

A man gave realty to his son and bequeathed to his daughter three hundred dollars to be paid a year after his death by the son out of the profits of the realty so given the latter. Afterward he contracted with the son to sell him the realty, delivered the deed, but was paid no money or obligations looking to payment thereafter, though it was known the contemplated consideration was the son's supporting his father and mother and paying three hundred dollars to his sister. The bequest to the latter was held to be demonstrative: Appeal of Welch, 28 Pa. 363. A bequest of money to be paid by a debtor of the testator would be demonstrative: In re Hoppel's Estate, 5 Phila. 216. "A demonstrative legacy is a bequest of a certain sum to be paid out of a particular fund": Appeal of Armstrong, 63 Pa. 312.

There was a bequest of money on deposit in a named savings bank and a subsequent clause in the will bequeathing to another person "all I have deposited in banks not otherwise disposed of." At the making of the will testatrix had money in the savings bank named, but that bank became insolvent shortly before her death. The bequest was demonstrative, to be paid by the savings bank if possible, but if not the legatee could resort for payment to the general assets: Bowen v. Dorrence, 12 R. I. 269. A will directed the executors to collect insurance policies and from the receipts therefrom to pay certain bequests. There was no intent expressed that the general assets should be free from resort by the legatee in case of any inadequacy of the fund appointed to pay the bequest, and so the latter was held to be demonstrative: White v. White, 73 S. C. 261, 53 S. E. 371.

There was a bequest to a daughter for life of five hundred and forty dollars a year, interest on the purchase money on lands the testator had sold. The bequest was demonstrative: Corbin v. Mills' Exrs., 19 Gratt. 438. Testator directed certain lands to be sold and his personal property also to pay debts. He bequeathed seven hundred dollars to one son, which was to be his entire portion. The homestead was to go to another son named also as executor—who was to farm it during the widowhood of his mother, pay one-fourth of the proceeds to her and the remainder to the six heirs. The homestead was sold after the widow's death and the proceeds of the property other than it were insufficient to pay the debts and the seven

hundred dollar legacy. It was held that this was a general legacy while the parts directed to go to the six heirs were demonstrative, and these legatees could not be called upon by the other: Myers v. Myers, 88 Va. 131, 13 S. E. 346. A bequest of bonds of a named description, when the testator at the making of the will has of such a large excess over those bequeathed, is not adeemed by a subsequent payment of the bonds during the testator's lifetime. The bequest is demonstrative: Ives v. Canby, 48 Fed. 718. To the same effect, see Boykin v. Boykin, 21 S. C. 513, and Wheeler v. Hartshorn, 40 Wis. 83.

From a perusal of these authorities it will be seen how true is the expression above quoted from Balliet's Appeal, 14 Pa. 451, to the effect that the distinction between a demonstrative bequest and a specific one, on the one side, and a general pecuniary one on the other, is very nice. "Ordinarily, a legacy of a sum of money is a general legacy, but when a particular sum is given with reference to a particular fund for payment, such legacy is denominated in law a demonstrative legacy": Gelbach v. Shively, 67 Md. 498, 10 Atl. 217. In that case the court goes on to speak of what it is that is to be looked to really in order to determine whether it is the one thing or the other, thus: "The authorities seem to be clear in holding that whether a legacy is to be treated as a demonstrative legacy or as one dependent exclusively upon a particular fund for payment is a question of construction, to be determined according to what may appear to have been the general intention of the testator: Creed v. Creed, 11 Clark & F. 509. For although the personal estate of the testator is the primary fund for the payment of legacies generally, particular legacies may be so provided for as to be a charge upon a particular fund or estate exclusively. As was said by the lord chancellor in Faville v. Blacket, 1 P. Wms. 779, 'It is possible for a legacy to be charged in such manner upon a certain fund as that upon its failing the legacy shall be lost' ": Bebach v. Shively, 67 Md. 498, 10 Atl. 247. "Whether all the cases can be reconciled or not, they all proceed upon the principle that whether a legacy is demonstrative or specific must be decided by the intent of the testator as it appears from the will; and that when a legacy is held to be demonstrative, a general intent is shown to have it paid without reference to the fund on which it is primarily charged": Stevens v. Fisher, 144 Mass. 114, 10 N. E. 803. To the same effect, see Davis v. Close, 104 Iowa, 261, 73 N. W. 600, and Davis v. Crandall, 101 N. Y. 311, 4 N. E. 721.

In General.—"A legacy is said to be general when it is not answered by any particular portion of, or article belonging to, the estate, the delivery of which alone will fulfill the intent of the testator": Davis v. Close, 104 Iowa, 261, 73 N. W. 600; In re Parson's Estate (Iowa), 129 N. W. 955; and see Gifft v. Porter, 8 N. Y. 516, to the same general effect. "A legacy is a 'general legacy,' and not specific where so given as not to amount to a bequest of a particular thing or money distinguished from all others of the same kind": In re Bar-

ton's Estate, 64 Misc. Rep. 242, 118 N. Y. Supp. 1087. It is said in Balliet's Appeal, 14 Pa. 451, that it is a legacy of quantity. In Rhode Island it is said that gifts of stated sums of money, without specifying any distinctive money in contradistinction from any other money of like amount, are general legacies: In re Martin, 25 R. I. 1, 54 Atl. 587. It was well said in Morton v. Murrell, 68 Ga. 141, that if a will directed bequest to be yielded out of the estate and mentioned no special part of the estate in that connection, to hold the bequest specific might be to frustrate the whole purpose of the testator clearly apparent from the instrument.

A bequest of "five thousand dollars in railroad bonds" is general: Gilmer's Legatees v. Gilmer's Exrs., 42 Ala. 9. And if one should bequeath all his personal estate, excepting specifically certain things therefrom, that would be a general bequest: Kelly v. Richardson, 100 Ala. 584, 13 South. 785. So, too, would be a legacy expressed thus: "I bequeath all my personal estate to my brother": In re Woodworth's Estate, 31 Cal. 595. In another California case there was a gift to the testator's five sons of the remaining one-half of all the real property the testator had acquired since marrying his wife then living, and all the residue of his personal property after payment of the legacies. This was a general bequest: In re Ratto's Estate, 149 Cal. 552, 86 Pac. 1107. That was, of course, in the nature of a residuary legacy. Such cannot be treated as specific, but from their general nature must be regarded as general: Fairer v. Park, L. R. 3 Ch. D. 309. And this, even though some of its particulars are enumerated in the will: Pickup v. Atkinson, 4 Hare, 624. But a bequest of the remainder of a particular thing or fund, after the payment of other legacies, or of all one's estate in a particular locality, may be specific so long as the identity of the thing or fund is not destroyed: Nisbett v. Murray, 5 Ves. 149.

The rule in England is that way, and in this country the courts have not departed very much from the English doctrine in respect, to these dispositions. Two testators by a joint will devised certain real estate to a nephew and two nieces on certain conditions and with certain limitations. The residuary clause provided that the residuary estate be divided equally between the nephews and nieces "or their children, on the same conditions, by the same rule and in the same manner as are detailed in the foregoing bequests." What really these last two words had reference to was the devises of the real estate, and the residuum was made up mostly of government bonds, money in bank, etc. The bequest of the residuum was held to be general: Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437. A testator bequeathed more stock than he owned when making the will and much more than he died possessed of, and made a residuary bequest of "all the rest, residue and remainder of my estate." The legacies of stock were general and the executor ordered by the court to purchase stock with the general funds so as to make up the absent shares: Slade v.

Talbot, 182 Mass. 256, 94 Am. St. Rep. 653, 65 N. E. 374. But where there was a devise and bequest to one person of described real estate of testatrix, her household furniture and all the rest of her property, the gifts of the realty and the household furniture were held to be specific, notwithstanding the general residuary clause: In re Corby's Estate, 154 Mich. 353, 117 N. W. 906.

A testator bequeathed domestic livestock to his daughters and charged lands, which he devised to his sons, with the furnishing of hay and pasturage for these livestock. He owned no such livestock, and so the bequest was not specific, but it was held the daughters might have the hay and pasturage for any livestock, within the number and kind mentioned, they might own during life: Kingsland v. Kingsland, 60 N. J. Eq. 65, 47 Atl. 69. There was a bequest to a daughter of an income for life from certain stock, with directions that if at the testator's death his estate was deficient as to any of the stocks particularly described, other similar stocks were to be purchased for the purpose with the funds of the estate. The daughter's legacy was general or pecuniary: Langdon v. Astor's Exrs., 16 N. Y. 9. Plaintiff was one of several legatees under a will in which the testator had enumerated securities he owned and their amount in money, which amount was to cover the bequests. The residue of his personalty, "as shown in the foregoing statement," the testator gave to his wife. He mentioned a sum due him which, when collected, was to be the subject of further bequests—one to the plaintiff. The remainder of all his personal estate he gave to his wife. The plaintiff's bequest was general: Glover v. Glover, 136 N. Y. 665, 33 N. E. 335. The testator directed the reserving by his executors from his personal estate of a fund sufficient to pay certain life annuities, and on the deaths of the beneficiaries to dispose of the fund as residuary estate. The annuities were general bequests: Turner v. Mather, 179 N. Y. 581, 72 N. E. 1152.

A bequest of a negro, with a description of the sort intended, when the executor was directed to purchase such a one rather than divide families, was a general bequest: White v. Beattie, 16 N. C. 87. So, also, was a bequest to the testator's wife of "one year's provisions"; Everitt v. Lane, 37 N. C. 548. There was a devise to a wife of particular real estate, also all the testator's "household goods and furniture, moneys, bonds, mortgages, outstanding debts due and owing to me [him], and all other my [his] personal estate of what nature or kind soever." The bequest of the personal property was general: In re Walker's Estate, 3 Rawle, 229. A bequest charged with the payment of debts is general: In re Ingersoll's Estate, 3 Pa. Dist. Rep. 339.

A testatrix gave six hundred dollars in stock described to one person and two thousand dollars in similar stock to another. After making the will she exchanged the described stock owned by her for stock of another sort. The bequests were general: In re Snyder's Estate,

217 Pa. 71, 118 Am. St. Rep. 900, 10 Ann. Cas. 488, 11 L. R. A. (N. S.) 49, 66 Atl. 157.

A bequest of the income from a twelve thousand dollar mortgage was made to two persons during life, and, at their deaths, bequests to others to the total amount of twelve thousand dollars. No direction was made that these should come out of the mortgage. The bequests were general: Teel v. Hilton, 21 R. I. 227, 42 Atl. 1111. A bequest to a son was of "six negroes to be designated by my executor, of a fair average value with my other negroes [including two named by the testator as being then in his possession] to him and his heirs forever." The bequest was general: Dawson v. Dawson, Speer Eq. 475. There was a devise to a wife, during widowhood and until the maturity of the youngest child, of all the testator's property, including his interest in a partnership; if the widow should remarry or the youngest child reach maturity, then all the property was to be divided equally among the wife and the children then living. The question was as to the partnership interest, and the holding was that the bequest of that was not specific: Stehn v. Hayssen, 124 Wis. 583, 102 N. W. 1074.

**Pecuniary Legacies.**—"The general rule of law as to pecuniary legacies (in the absence of any sufficient indication of a contrary intention) is that they are payable by the personal legal representatives of the testator (in whom the whole personal estate vests by law) out of the personal estate not specifically bequeathed. The presumption is that the testator intends them to be so paid. Unless charged upon it by the will, they are not payable out of the real estate": Robertson v. Broadbent, 8 App. Cas. 812. A bequest of six hundred dollars in cash to several persons, each, is, it is almost unnecessary to say, a general bequest: Kelly v. Richardson, 100 Ala. 584, 13 South. 785. So would be similar bequests when the testator makes them on the expressed hypothesis of his having at death sufficient personal property: In re Corby's Estate, 154 Mich. 353, 117 N. W. 906.

In Vaiden v. Hawkins, 59 Miss. 406, it is said in effect that to give a specific character to a pecuniary legacy the language of the testator must go very clearly to that effect; for instance, the oft-mentioned case of money in a bag: Lawson v. Stitch, 1 Atk. 508. The bequest of a sum of money without mention of any particular fund for it to come out of is to be looked upon as a general bequest, even though in the residuary clause it is referred to as specific: Parker's Exrs. v. Moore, 25 N. J. Eq. 228. A man bequeathed a sum of money to each of his children "to be kept in gold and silver" and paid to the legatees as they arrived each at maturity, the money not to be lent meantime nor used. The bequests were general: Mathis v. Mathis, 18 N. J. L. 59.

A will recited that the testatrix had "two thousand dollars out at interest at seven per cent," and directed that "said sum shall be kept invested" until a time stated, and then divided between two named

persons. These were general bequests: Langstreth v. Golding, 41 N. J. Eq. 49, 3 Atl. 151. An entire estate was, under the will, to be reduced to cash, and of this a certain sum was to be invested and the interest given to the wife of the testator, there being no express reference in the will to this being in lieu of dower. Another sum was to be invested and the interest paid to an adopted daughter. The gifts were general bequests: In re Williams, 1 Redf. Sur. (N. Y.) 208. A bequest by a woman to her husband of the use of five thousand dollars and as much of the principal as might be necessary for his support is general: Scofield v. Adams, 12 Hun, 366. The executors under à will were directed to invest a sum such as would bring in a clear one thousand dollars annually, and out of the investment to pay the wife of the testator one thousand dollars during widowhood. It was a general bequest: Haviland v. Coeks, 6 Dem. Sur. 4. A testator made his wife executrix and gave her fifty thousand dollars, "which may be invested in bank stock and in bonds." The bequest was general: In re Hodgman's Estate, 140 N. Y. 421, 35 N. E. 660. There were bequests of certain sums "in government bonds." When making the will and until his death the testator owned such bonds, the par value of them all being equal to the bequests so made; but at his death the bonds were at a premium. The bequests were general and the legatees entitled to so much money, rather than bonds: In re Van Vliet, 5 Misc. Rep. 169, 25 N. Y. Supp. 722. The face of a bond was to be collected and divided among legatees named in the will. After making this the testator took by assignment from the obligors of the bond, in place of the latter, another bond for a like amount and this was found among his assets. The bequest was general: Doughty v. Stillwell, 1 Bradf. 300.

Bequests to two of the sons of the testator, absolutely, one to have two hundred and fifty dollars and the other four hundred. A third son owed the testator one thousand dollars secured by mortgage, wherefore this son was to pay the legacies to his brothers out of the mortgage debt, retaining the balance due by way of a bequest from the father to him. The bequests to the first two sons were general, and the estate liable for them: Newton v. Stanley, 28 N. Y. 61. A bequest of a specified sum "or the value thereof in property" is general: Fagan v. Jones, 22 N. C. 69.

If a person is given by will a stated sum to be paid "in good notes" at his option, the person has a general legacy; so too if the bequest is of a stated sum "in notes to be paid by the executor" as soon as may be convenient after the testator's death: Perry v. Maxwell, 17 N. E. 488.

In Cryder's Appeal, 11 Pa. 72, the will provided first for the pay-ment of the testator's debts, next for the sale of one of his two farms—with directions as to the price and how and when this was to be paid, and for the sale of the other farm for the best price obtainable. Then came bequests to some of his children, to the pay-

ment of which the produce of these sales was to be applied—that of the sale of the first farm as far as it would go and that of the second for the balance. Then came devises to other children in fee. Finally, there was a direction as to the order of payment of the "pecuniary legacies" payable from the product of the sale of the first-mentioned farm. The executor exhausted the personalty and the products of the sale of the two farms in paying the debts, and there was no fund for satisfying the legatees. The bequests were held, however, not to be general but specific. There was a devise of one of the plantations of the testator to one person, and of another to another person, and to the latter in addition so much money as with the plantation he took would make the two bequests even. These were, it was held, general bequests: Jenkins v. Hanahan, Cheves Eq. 129.

A quasi pecuniary legacy, and hence general, was that of twenty negroes, so decided in Warren v. Wigfall, 3 Desaus. 47. A testatrix, as a feme sole, made a will, whereby a missionary society was given eight thousand dollars, and went on to say that if that sum proved to be more than half her estate, the society was to have but one half; a church society was given the rest of what she had, real and personal. The missionary society took a general bequest: In re Carey's Estate, 49 Vt. 236, 24 Am. Rep. 133.

**Securities Given in Terms of Money.**—The effect in a bequest of the words, "I give to my friend [naming him] ten thousand dollars, in notes or in Confederate states bonds, at the option of my executors hereinafter named," is to make it general: Harper v. Bibb, 47 Ala. 547. "I give to my brother twenty thousand dollars in Confederate bonds," is a general bequest: Gilmer's Legatees v. Gilmer's Exrs., 42 Ala. 9. A will directed "that the income from six thousand dollars in bonds of the United States shall be set apart and appropriated," etc. The testator owned twelve thousand dollars in such bonds at the time, and by the will disposed of twenty-one thousand altogether. The bequest was general: Capron v. Capron, 6 Mackay, 340. Under a will "notes to the amount of sixteen hundred dollars, on the N. K. & G. W. C. security," were devoted to buying for a woman and her children a plantation, this to be sold again and the proceeds distributed when the eldest child came of age. The bequest was general: Smith v. Smith's Exrs., 23 Ga. 21. Where a certain number of shares of the stock of a named corporation was bequeathed without any reference to particular shares, the bequest was general: Palmer v. Palmer's Estate, 106 Me. 25, 19 Ann. Cas. 1184, 75 Atl. 130.

A will provided for bequests of six hundred dollars each to four persons. "This amount is in notes," it went on, "such as the executrix of my will may turn out to them." Testator's wife was given the residue of the estate and named executrix. It was held that the language here did not contemplate specific bequests of notes, but indicated rather a fund; that the legatees were not restricted to notes

good or bad, and that if the fund mentioned failed to meet the amount of the bequest, resort should be had to the estate generally: Frank v. Frank, 71 Iowa, 646, 33 N. W. 153. Bequests were of stated amounts "in United States government bonds" to each of the two daughters of the testator. The latter left when he died such bonds amounting on their faces to the total of the bequests. The bequests were general: Evans v. Hunter, 86 Iowa, 413, 41 Am. St. Rep. 503, 17 L. R. A. 308, 53 N. W. 277.

At both the making of the will and his death the testator owned just eight state of Missouri bonds of the par value of one thousand dollars each; the words of the bequest were, "I give and bequeath to O. eight thousand dollars in state of Missouri bonds." The bequest was general: Dryden v. Owings, 49 Md. 356. When making his will the testator owned one hundred and eighty shares of the stock of a certain bank. He bequeathed "sixty shares of bank stock in the," etc., naming the bank, to each of two daughters, and afterward sold the stock. The bequests were general: Johnson v. Goss, 128 Mass. 433. One bequeathed particular sums in bonds and mortgages, when he did not have at the time of making the will securities of the sorts named enough to satisfy the bequests, and did not make any direction for selecting them out of his estate. The bequests were general: Blundell v. Pope (N. J.), 21 Atl. 456. A direction in a will to devote a named sum of money to buying a particular, mortgage would not make the contemplated bequest specific: Moore's Exr. v. Moore, 50 N. J. Eq. 554, 25 Atl. 403.

If one makes a bequest of a stated number of shares of a named stock, and describes them no more closely, the bequest is general: Tifft v. Porter, 8 N. Y. 516. "I give to," etc., naming the legatee, "twenty-five shares of the," etc., naming the corporation, "or the proceeds of the same, should the same have been sold," is a general bequest: Osborne v. McAlpine, 4 Redf. Sur. 1. Executors were directed by the will to keep fifteen thousand dollars invested in government bonds and pay the income to the husband of the testatrix from the date of her death. The bequest was not specific but general, even if the testatrix had owned the bonds when making the will: Jackson v. Westerfield, 61 How. Pr. 399. There was a bequest of two thousand dollars and another of one thousand, in each case the sum given being named as in government bonds. The bequests were general: In re Newman, 4 Dem. Sur. 65. If one has bonds and stocks of many sorts, and makes bequests, in varying sums to various persons, of "my" stocks and bonds as of their par value and without identifying them more closely, the bequests are general: In re Hadden, 1 Con. Sur. 306, 9 N. Y. Supp. 453. A bequest was of "the sum of fifty thousand dollars of the capital stock of the [etc., naming the company], or in case I shall not hold that amount of such stock . . . I direct them [the executors] to take from my other personal property an amount sufficient to equal said sum." There were words in the will

whereby other persons were given bequests in varying amounts in "shares of the capital stock" of the same company. The bequest was held to be pecuniary and general, not specific: In re Anderson, 19 Misc. Rep. 210, 43 N. Y. Supp. 1143.

A bequest was of the contents, as such might be at the time of testator's death, of a box with a safe deposit company to several persons in stated proportions. When the testator died the box was found to contain stocks, bonds and life insurance policies. The securities were of all sorts of values, and it was impossible to divide them among the legatees. The bequests were held to be general: In re Fisher, 93 App. Div. 186, 87 N. Y. Supp. 567. Under the terms of a will the testator's debts were to be paid, his wife was to have the family residence for life and was to have also the household furniture, etc. The residue was to go to the children subject to the wife's dower. By a codicil the testator put corporate stock in the hands of trustees, in trust, to be held for a named period, the dividends to be distributed among the beneficiaries, and to these the shares were to be delivered at the end of the trust. The testator owned real estate, but it brought in nothing, and the stock was the only money making part of the estate when the codicil was made. It was held that the bequest of the dividends was general and was burdened with an obligation to pay debts: In re Noon's Estate, 49 Or. 286, 88 Pac. 673, 90 Pac. 673.

A bequest of "fifteen shares of" a named stock is a general bequest, and the testator's owning fifteen shares of such stock when making his will and also at his death does not render it otherwise: Appeal of Sponsler, 107 Pa. 95. A testator had at his death forty-three thousand dollars in unregistered six per cent bonds of a certain company and five thousand dollars in like bonds registered in the name of another person, deceased. The latter's widow was given by the testator a bequest of forty-eight thousand dollars in the six per cent bonds of the company. The bequest was general: In re Cummings' Estate, 12 Pa. Co. Ct. 45, 2 Pa. Dist. R. 51. Bequests were made to several persons, in varying amounts, of certain shares of stock stated in the will to be owned by the testator and standing in his name on the books of the company. The bequests in all amounted to two thousand two hundred shares. When making the will testator had three thousand two hundred and fifty-seven shares, but had only two hundred shares when he died. The bequests were general and so not subject to ademption: Mahony v. Holt, 19 R. I. 660, 36 Atl. 1.

A will provided for a bequest of ten thousand dollars in money, stocks, bonds or notes that the testator might have at his death. At his death he had of money but a few hundred dollars, seven thousand and forty dollars' worth of railroad stock, two thousand two hundred dollars in good notes, and three thousand dollars in desperate ones. The legacy was general: Martin v. Osborne, 85 Tenn. 420, 3.

S. W. 647. There was a bequest to the testator's daughter of three hundred dollars per annum, interest on five thousand dollars' worth of state stock of Virginia. It was a general bequest: Corbin v. Mills' Exrs., 19 Gratt. 438. A bequest was of certain named stocks and ten thousand dollars in such United States six per cent stock, bank or other stocks at the current value not under par, or money, as may, as the will ran, be on hand, not otherwise appropriated, with power in the executors to change the investment of the funds under the direction of the orphans' court. This was a general legacy: Ladd v. Ladd, 2 Cranch C. C. 505, Fed. Cas. No. 7972.

Stated Derivation of Subject of Bequest.—A bequest in trust of "the sum of eighteen thousand dollars, first to be taken out of the proceeds of the sale of realty," etc., is not specific but general—a general bequest of money to a certain amount to be paid, in the first instance, out of a fund produced from the sale of realty, then out of the residuum in case of the insufficiency of the other: Hutchinson v. Fuller, 75 Ga. 88. A person was given by will money payable out of stock named, owned by the testator. The bequest was held to be a general one, and no specific shares of stock were susceptible of levy in aid of the legatee's judgment creditor: Stout v. La Follette, 64 Ind. 365. "I give and bequeath to my said father and mother the sum of three thousand dollars, and I desire my executors to pay the same over to them out of my life insurance money payable to my executor as soon as collected." This was a general bequest payable from the general assets of the estate in case of a failure to collect the life insurance policy: Byrne v. Hume, 86 Mich. 546, 49 N. W. 575.

A testator gave his wife the sum of twenty thousand dollars to be paid in installments, the first installment to be due in twelve months after his death; he then went on to say how this was to be paid out of this note and that owing him. The balance of the installments were to be paid in money at the wife's desire; the remaining installments to be paid annually from the sale of the produce of his farm. It was a general pecuniary legacy that was not lost in case the funds failed to which it was referred: Mitchener v. Atchinson, 62 N. C. 23.

A bequest of money in a will directing the payment of legacies out of the personal property is not a specific or demonstrative bequest, but a general one: Glass v. Dunn, 17 Ohio St. 413. Bequests of "all moneys or legacies coming to me from any source" are not specific, but general: Dean v. Rounds, 18 R. I. 436, 27 Atl. 515, 28 Atl. 802. There were bequests to two daughters of one thousand dollars each, "to be paid in either money or negroes at their value," and a bequest to a son of "two thousand dollars, etc., negroes Lewis, Jane, Buck, Daniel, Bob and Prince to be divided according to valuation between [the three children] to answer to the amount above bequeathed." The bequests were not specific, but pecuniary and general: Bell v. Hughes (S. C.), 8 Rich. 397.

Whether a bequest, made in general terms, is specific or not so depends on whether the things bequeathed are or are not specific in character; so, where a will gave "all property, real and personal," which the testator had received through his wife and the property so received was found to have been received in money wholly, the bequest was held to be a general one: Pell v. Pell, Speer Eq. 18.

Residuary Bequests, Actual, Virtual or Quasi.—A testator disposed specifically of his personal property and then gave to his executor "the rest and residue of" his estate except some contingent bequests in trust to manage for the benefit of a daughter until her maturity, upon which he was to hand it over to her. This was a devise to the daughter so far as the real estate was concerned, and she did not take only as a residuary legatee: Maybury v. Grady, 67 Ala. 147. By the first clause of a will all the testator's estate, real, personal and mixed, was given to his wife for life with remainder over to his children, and by a subsequent clause provided that some sums of money that would or might come into his estate afterward should, when received, be divided among the wife and children. The later clause did not, it was held, change the effect of that foregoing so as to make residuary legatees of the persons taking under the first clause: Henning v. Varner, 34 Md. 102.

A residuary legacy is not regarded as specific, and the residuary legatee cannot call upon the other legatees to abate: Blaney v. Blaney, 1 Cush. 107. A devise by way of residue shows that the devisee is to have something uncertain and unknown: Anderson's Exrs. v. Anderson, 31 N. J. Eq. 560. There was a bequest of thirteen hundred dollars in trust for a brother during life, after which five hundred dollars of it was to go to the brother's son T., and the remainder to his other children equally. A part of the thirteen hundred dollars was used in paying debts of the estate. The bequest of the eight hundred dollars was held to be not a residuary legacy and that T.'s share must abate with that of the others: Van Nest v. Van Nest, 43 N. J. Eq. 126, 13 Atl. 179. A gift to a wife of "all my property, house and lot and store, and all my personal property therein," followed in a will some legacies to other persons. It was held it was clearly specific and was not a residuary gift, and so was not called on to abate, the personal property being insufficient: In re Lynch's Estate, 13 Phila. 322. A residuary bequest is general and not specific, although articles bequeathed are enumerated: In re Martin, 25 R. I. 1, 54 Atl. 589. A will disposed of a part of the testator's personal property, and directed that his funeral expenses and debts be paid out of any money that might come into the hands of the executors; it then required these to sell the real property, and out of the product pay specific sums to certain devisees, among them two nieces, and divide the remainder, if there should be any, between these two nieces. It was held that the nieces took this as residuary legatees: Darden v. Hatcher, 1 Cold. (41 Tenn.) 513.

There was a specific pecuniary bequest given to a person, and this person also made residuary legatee. The same will gave annuities and other specific pecuniary legacies to other persons, and provided "that in case the personal estate and the produce arising from the real estate, which I shall die seised and possessed of, shall not be sufficient to answer said annuities and legacies, then said legacies and annuities shall not abate in proportion, but the whole deficiency, if any, shall be deducted from the legacy bequeathed to," etc. (naming the pecuniary legatee here first above mentioned). When the testator died his estate was amply sufficient to pay all the debts, of the executor. It was held that since the specific pecuniary bequest and the residuum had been given to the one person, and upon the same terms, and the testator appeared not to have intended the pecuniary legacy to have a preference over the residuum, that legacy assumed the character of a residuary bequest and was liable to deduction for deficiency in the other specific annuities: Sibley v. Young, 3 Cranch, 249, 2 L. Ed. 429.

**Words of Testator Identifying Items in Residuum.**—There were pecuniary bequests and these words follow: "I give, devise and bequeath to Á. the residue of said unimproved lot, my property on W. street in said town of R., improved by the brick dwelling-house in which I now reside, and the brick dwelling in which C. has his saddler's shop, all my household and kitchen furniture, stocks, bonds, notes and other evidences of debt, and all the rest and residue of my estate, real, personal and mixed, to her, her heirs and assigns forever, in fee simple." Here the bequest was general, and for payment of the pecuniary bequests the legatees could look to the proceeds of the furniture, etc.: England v. Vestry of Prince Georgia Parish, 53 Md. 466.

Where in a bequest to the residuary legatee certain articles are named as being of it with such words following as "and all the rest and residue of my estate," this does not necessarily make the bequest specific as to the articles named: Le Rougetel v. Mann, 63 N. H. 472, 3 Atl. 746. The stating in a residuary devise of what things go to make up the residue, bequeathed equally to persons named, and the directing that if any of these things be sold they be made up at a specific value, do not make the devise specific: Bailey v. Wagner, 2 Strob. Eq. 1.

**Estate Entire or in Portions.**—A provision in a will that the wife of the testator shall receive one-half of all property of which he may die seised does not effect a specific, but a general, bequest: Abila v. Burnett, 33 Cal. 658. A provision that a son under age shall be educated and supported up to full age and that then he be given the residue of the estate in the executor's hands does not amount to anything but a general legacy: Bradford v. Haynes, 20 Me. 105. Where a devise is "of all my property," and the testator proceeds then to details of it and to except an item here and there, it is a general devise; as also a devise of "all the rest of my books," after named

ones have been devised already, "with my household furniture to be preserved by my wife for her own use during her life, .as hereinbefore mentioned, or to be sold or given to our children or grandchildren in such manner or proportions as she may think proper": Mayo v. Bland, 4 Md. Ch. 484.

A bequest of all the remainder of an estate, after the legacies, made by the will, shall have been paid and specific gifts deducted, is general: Hays v. Jackson, 6 Mass. 149. The following bequest was held to be not specific, to wit: "I give and bequeath to my beloved wife Nancy all my real estate, personal property, house, furniture," etc., "to have and to hold as hers as long as she shall live, and after her death the property that is remaining I request to be divided among my surviving children": Calkins v. Calkins, 1 Redf. Sur. 337.

After making his will the testator added a codicil thus: "Should I alone die on this trip, or in consequence of it, then, of the one thousand dollars before willed to my wife, five hundred dollars of this money are to be deducted from her and given to my daughter Lillie, or Lillian, before mentioned." By the will proper no specific sum of one thousand dollars had, in fact, been given to the wife, but to her and another daughter there had been given the residue of the estate, the value of which exceeded two thousand dollars. The bequest was general: Adair v. Adair, 11 N. D. 175, 90 N. W. 804.

A man gave to his wife by will his real estate, together with all his furniture, plate, personal property, debts due, etc. Then a trust was created, for the benefit of his son and married daughters, in lands. Fresh real estate became his after the making of the will but he died, having made no codicil and leaving debts. It was decided the wife had a general bequest and that this must be resorted to before the newly acquired real estate in paying the debts, since no intention appeared by the will that it be spared: In re Walker's Estate, 3 Rawle, 229. There was a bequest to a daughter of "all I now possess." The testatrix provided then that the daughter should take as well "the bond held by me." It was decided that "all I now possess" was a general bequest: In re Zeller's Estate, 2 Woodw. Dec. 191.

It was stated in a will that one—an expectant beneficiary—had slaves of his own, and the testator proceeded to give to two others "all the slaves" which he, the testator, might have at his death. This was a general bequest: Jenkins v. Hanahan, Cheves Eq. 129. A man directed by will that all his estate, after the debts should have been paid, should be divided equally between, etc. When making the will he had only personal property but acquired real afterward. The legacies were general: Henry v. Graham, 9 Rich. Eq. 100. Executors were directed to sell all property not specifically devised, to get in all debts owing the testator and devote the interest arising from the fund to schooling the children; and at the maturity of the latter, each, to pay him or her an equal share of the principal. These be-

quests were general: McFadden v. Hefley, 28 S. C. 317, 13 Am. St. Rep. 675, 5 S. E. 812.

"It is necessary to bear in mind one or two elementary rules governing the construction of wills. The first is that a will should be construed according to the intention of the testator": Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753. Whether a legacy is specific or general depends on the intention of the testator: Cuthbert v. Cuthbert, 3 Yeates, 486. A legacy will not be held to be specific unless the intention in the will to make it so be clear: Morriss v. Garland's Admr., 78 Va. 215. This intent must be deduced from the face of the will: Estate of Young, 123 Cal. 337, 55 Pac. 1011. However, at the same time the testator. must use language sufficient for his purpose: Estate of Young, 123 Cal. 337, 55 Pac. 1011. In other words, it must not be left to be inferred from the will that he meant this thing or that, for no matter how strong the inference in favor of the specific quality, if that is all the court has to go upon it will fall back upon the rule that solves doubt by making bequests specific whenever possible. It has been already said that in Sibley v. Perry, 7 Ves. 522, Lord Eldon admitted a belief that the testator really intended the bequest to be specific. If the testator had been more particular with his language, that belief must have been rather a conviction, and the court would have had no excuse for availing itself of the rule its conservatism inclined it to favor.

In Missouri Baptist Sanitarium v. McCune, 112 Mo. App. 332, 87 S. W. 93, the testatrix had made several specific bequests showing thereby that she knew how to make them, and this knowledge was imputed to her by the court in construing other bequests which, if intended by her to be specific, were certainly not expressed as if she had given them the benefit of her knowledge. In Witherspoon v. Watts, 18 S. C. 396, when the court found reason to impute knowledge similarly to the testator, it held that his referring in a later clause in the will to the legacy as having been "specifically" disposed of was entitled to weight.

In Methodist Episcopal Church v. Hebard, 28 App. Div. 548, 51 N. Y. Supp. 546, it was held that a bequest was demonstrative if the will showed clearly the testator's intention that the legatee should have the money. That is all very well, but a bequest of money in broad terms without identifying words or mention of a fund for paying it would hardly have that effect. In one case the testator referring to the legacy after making it called it "specific," but it did not satisfy the criteria, and the court said it was not such: Parker's Exrs. v. Moore, 25 N. J. Eq. 228.

In Estate of Young, 123 Cal. 337, 55 Pac. 1011, it is said, to be sure, that even if the legal effect of the testator's expressed intent is intestacy, it will be presumed he designed that result. That is going rather far; the courts do not favor intestacy: Le Breton v. Cook, 107 Cal. 410, 40 Pac. 552. A testator may defeat his own in-

tention. Through omissions or clashing provisions in the will, it may be- impossible to enforce the intention: Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753.

The intention must be indicated too by the will itself. It was held in Cagney v. O'Brien, 83 Ill. 72, that a bequest of money to be disposed of by the executor "according to verbal instructions given them by" the testator is not to be taken as a specific legacy in the face of express words in the will declaring a trust. To find out what the testator's intent was, one is not restricted to any item, phrase or paragraph in a will, but may take the latter as a whole and judge it according to its spirit, as in Re Carr, 24 Misc. Rep. 143, 53 N. Y. Supp. 555. That the intention of the testator in respect to a disposition in one part of his will may be reflected from another part is shown in Appeal of Knecht, 71 Pa. 333, when the rule is applied. In Douglass v. Douglass, 13 App. D. C. 21, the expression "my other" served to fix the possessive character on the subject of a preceding bequest, being used to describe stock or bonds bequeathed. To the same effect, see Harvard Unitarian Society v. Tafts, 151 Mass. 76, 7 L. R. A. 390, 23 N. E. 1006, where the expression was "the balance of my stock"; and Everitt v. Lane, 37 N. C. 548, where it was "the balance of my negroes." In McGuire v. Evans, 40 N. C. 269, the expression was: "In case there should be any deficiency in the bank stock which I hold at my death as compared with the amount bequeathed in my will," etc.; and the effect was to make the bequests referred to specific.

But nothing is to be merely inferred or presumed from the will or circumstances affecting it. In a case in Iowa a legacy of a stated sum of money had been left to a daughter of the testator and general legacies to his sisters, and it was contended that the legacy to the daughter was intended as specific since naturally the testator would discriminate in favor of a daughter, as against sisters, besides which the daughter had received first attention in the will; but the court would not admit the contention: In re Parson's Estate (Iowa), 129 N. W. 955. Another apt illustration was a case in New York where it was held that the gift by a testator of a gold watch to one daughter raises no presumption that in then giving another daughter thirty-five dollars in money he intended the money gift to be specific: Bliven v. Seymour, 88 N. Y. 469.